880 P.2d 300

Ronald PAIZ and Bernadine Paiz,
Plaintiffs–Appellees, and
Cross–Appellants,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, a foreign corporation, and
Robert Ellsworth, Defendants–Appellants, and Cross–Appellees.

No. 20446.

Supreme Court of New Mexico.

July 29, 1994.

Rehearing Denied Aug. 17, 1994.

Miller, Stratvert, Torgerson & Schlenker, P.A., Alice Tomlinson Lorenz, Nancy Augustus, Albuquerque, for appellants and cross-appellees.

The Branch Law Firm, Turner W. Branch, Brian K. Branch, Arthur Solon, Albuquerque, for appellees and cross-appellants.

Sager, Curran, Sturges & Tepper, P.C., C. Kristine Osnes, Albuquerque, for amicus curiae, Defense Lawyers Ass'n.

## OPINION

MONTGOMERY, Chief Justice.

Ronald and Bernadine Paiz ("the Paizes" or "Plaintiffs") sued State Farm Fire and Casualty Company and Robert Ellsworth, the agent through whom they purchased a policy of hazard insurance from State Farm ("Defendants"), on several claims arising from State Farm's denial of payment for damage to a building destroyed by fire. The Paizes won a jury verdict of $380,000 in compensatory damages against both Defendants and $485,000 in punitive damages against State Farm. The trial court entered judgment on the verdict, awarding Plaintiffs the damages assessed by the jury, along with prejudgment interest. Defendants appeal from the judgment in its entirety, and Plaintiffs cross-appeal from part of it.

Defendants' appeal is based principally on the grounds that the jury's verdict is internally inconsistent and that the award of punitive damages rests on a legally insufficient basis. (Other grounds are also asserted; these will be discussed in the course of this opinion.) We basically agree with Defendants' position, but do not agree that it requires reversal of the entire judgment. We affirm the compensatory-damage award against State Farm, reverse the punitive-damage award, and reverse the judgment against Ellsworth. In our discussion of the punitive-damages issue, we hold that such an award for a breach of contract may no longer be based solely on the breaching party's "gross negligence" in failing to perform the contract.

## I.

In 1984, the Paizes purchased a parcel of land in Albuquerque and subsequently divided it into two tracts: Tract A, on which seven apartment buildings were located, and Tract B, where the structure that is the subject of this dispute—a defunct nightclub that the Paizes were renovating into an office building—was situated. Mr. Paiz contacted Ellsworth, through whom he had obtained insurance on virtually all his properties, seeking to obtain coverage for the tracts, and Ellsworth visited the property. According to Paiz's testimony, Ellsworth knew of Paiz's plans to remodel the office building; Paiz told Ellsworth that he wanted insurance for the entire property, including the office building; and Ellsworth indicated that he would provide coverage for the entire project. Paiz provided Ellsworth with a plot plan which showed the seven apartment buildings on Tract A and the office building on Tract B. The seven apartment buildings were numbered consecutively in thick, conspicuous ink; the office building was not highlighted. Ellsworth testified he had thought that Paiz was going to tear down the building on Tract B and only wanted coverage for the apartment buildings on Tract A.

When Paiz received the policy and declarations page, there apparently was no attached schedule of the buildings that were covered. The declarations page described the insured premises with reference to the street address

of the parcel (which Paiz took as encompassing both tracts) and stated that it provided "blanket coverage." From this declarations page and his communications with Ellsworth, Paiz assumed the office building was covered. This assumption was reinforced when the building was burglarized in March 1986 and, after Paiz submitted a claim to Ellsworth, State Farm paid for the losses to the building. Also, when a car hit a gas meter connected to the office building in August 1988, State Farm paid the damages; and when the office building was vandalized in April 1989, Paiz reported the broken storefront windows to Ellsworth and Ellsworth instructed him to acquire an estimate and submit it to State Farm. Ellsworth testified that Paiz had led him to believe that all of these claims pertained to the apartment buildings on Tract A and that he never intended that State Farm would pay any claim pertaining to Tract B. For example, the loss report on the burglary that Ellsworth prepared and Paiz signed stated that the burglar had "broken into [an] apartment."

On June 21, 1989, a fire destroyed the office building on Tract B. Paiz reported the fire to Ellsworth the next day; and Ellsworth, after speaking with Paiz and reviewing the documents he had pertaining to Paiz's policy, submitted a claim to State Farm's claims department. The claims department investigated the claim by visiting and photographing the site, acquiring drawings and blueprints, speaking with Ellsworth a number of times, taking a recorded statement from Paiz, and gathering underwriting records. For some reason, the claims department failed to obtain the claim reports for the three previous claims Paiz had made for damage to the office building. Noting that the building was not listed on the schedule of covered buildings and ascertaining from Ellsworth that he had never intended to include the building under the policy, the claims department concluded that the building was not covered and denied the claim. The claims department was also concerned because an Albuquerque Fire Department investigator had concluded that the fire had been intentionally set and because the building had been vacant and on the market for five or six months—facts that suggested to the claims department that Paiz might have been linked with the fire.

On October 2, 1989, the Paizes sued State Farm and Ellsworth on a number of different theories revolving around State Farm's denial of the claim. The case was tried to a jury in November 1991. The judge submitted the case to the jury based on the following claims: (1) As against State Farm, a claim for breach of contract on the theory that Plaintiffs' insurance policy covered the office building or that State Farm was estopped from denying coverage, along with a claim for negligence on the theory that State Farm failed to pay Plaintiffs' loss within a reasonable time or that it failed to exercise ordinary care in investigating whether the building was covered; and (2) as against Ellsworth, claims that he had negligently failed to obtain adequate insurance coverage for Plaintiffs' property, that he had negligently misrepresented the extent of Plaintiffs' coverage, and that he had violated the Unfair Practices Act (NMSA 1978, Sections 57–12–1 to –21 (Orig.Pamp.)), by making false or misleading representations in connection with his sale of insurance to Plaintiffs. The court also submitted, as against State Farm only, Plaintiffs' claim for punitive damages—which could be awarded if, and only if, the jury should find that State Farm's conduct was grossly negligent.[1] The court refused to submit a claim for punitive damages against Ellsworth. Additionally, in its instruction informing the jury of the parties' claims and defenses, the court described Defendants' various defenses, including, with respect to Plaintiffs' claims of negligence, the defense

---

1. In accordance with SCRA 1986, 13–1827 (Repl.Pamp.1991) (UJI Civil 13–1827), the court instructed the jury: "If you find that plaintiffs should recover compensation for damages, and if you further find that the conduct of the defendant State Farm, its agents, employees, and representatives was grossly negligent, then you may award punitive damages.... Grossly negligent conduct is an act or omission done without the exercise of even slight care under the circumstances." The court ruled that there was insufficient evidence to support a claim for punitive damages under any of the other grounds listed in UJI Civil 13–1827, viz., conduct that is malicious, willful, reckless, wanton, fraudulent, or in bad faith.

that Plaintiffs themselves had been negligent (i.e., comparatively negligent) in various respects.

Before instructing the jury, the trial court ruled that Plaintiffs had presented no evidence that State Farm had acted with bad faith and directed a verdict against them on that claim. Along with its instructions, the court submitted a special verdict form to the jury, asking whether State Farm had breached its contract with Plaintiffs, whether Ellsworth had violated the Unfair Practices Act, whether either State Farm or Ellsworth had been negligent, whether either Defendant had made a negligent misrepresentation, and whether each Defendant's conduct had proximately caused damage to Plaintiffs. The jury answered "yes" to all these questions. In response to a question requesting the jury to compare the negligence of the various parties, the jury attributed negligence as follows: State Farm, 50%; Robert Ellsworth, 35%; and Ronald Paiz, 15%. In the special verdict form the court informed the jury that the court would multiply the percentage of each Defendant's fault by the Plaintiffs' total damages and then enter judgment for the Plaintiffs against each Defendant in the proportion of damages found as to that Defendant.

Pursuant to the court's damage instruction, the jury found the total amount of Plaintiffs' compensatory damages to be $380,000. The jury also found that the acts and omissions of State Farm, its agents, employees, or representatives, were grossly negligent and that Plaintiffs were entitled to an award of punitive damages against State Farm in the sum of $485,000. The court subsequently entered judgment against the Defendants for $380,000 in compensatory damages without any reduction for comparative negligence, plus prejudgment interest of approximately $86,700 (along with costs of $7,320), and against State Farm for $485,000 in punitive damages.

Defendants appeal from the judgment on various grounds, and Plaintiffs cross-appeal on the ground that the judgment fails to include an award of attorney's fees against Ellsworth under the Unfair Practices Act.

We affirm the judgment with respect to the award of compensatory damages (plus prejudgment interest[2] and costs) against State Farm and with respect to the trial court's refusal to award attorney's fees against Ellsworth. We reverse the judgment with respect to the damages (plus costs and interest) assessed against Ellsworth and with respect to the award of punitive damages against State Farm.

## II.

State Farm contends that the trial court erred in instructing the jury on the claims of negligent misrepresentation, negligent investigation, and negligent delay in making payment. State Farm argues that these negligence claims should have been submitted to the jury, if at all, as alternative claims; that submission of the negligence claims along with the breach-of-contract claim was confusing to the jury and prejudicial; and that the jury's verdict, finding *both* that State Farm had breached its contract *and* that Defendants were guilty of misrepresentation, was internally inconsistent. We agree in part, but we see no sufficient basis for upsetting the award of compensatory damages as against State Farm. (We discuss the judgment against Ellsworth in Part III of this opinion.)

The court's compensatory damage instruction, which was requested by Plaintiffs, stated that the jury could award Plaintiffs:

> The value of the full cost of replacement of plaintiffs' office building which was destroyed by fire, at the same site with new material of like kind and quality; without deduction for depreciation, together with the expenses incurred by plaintiffs in removing debris from the site after the fire, together with the value of plaintiffs' personal property which was destroyed in the fire.

These items of damage were the same items recoverable under the insurance policy. Plaintiffs did not request, nor adduce evidence concerning, any instruction that would have enabled the jury to award additional

---

2. State Farm does not challenge the award of

prejudgment interest.

damages for *any* of their claims based on negligence. The jury awarded $380,000 in compensatory damages against the Defendants, and the trial judge declined to reduce this award by the fifteen percent comparative negligence attributed to Paiz or to adjust Defendants' liabilities for the negligence attributed to each of them. This action demonstrates that the trial judge viewed the damages awarded as arising from State Farm's breach of contract instead of from any of Defendants' various negligent acts.

Specifically, Plaintiffs did not present evidence that they had suffered any emotional distress as a result of having been told, erroneously, that the burned building was not covered, nor did they establish that they had been harmed by the allegedly negligent delay in payment. As noted, Plaintiffs requested, and therefore obviously did not object to, the court's compensatory-damage instruction; nor did they request instructions tailored more precisely to their tort claims; nor have they challenged the jury instructions on appeal. Likewise, Defendants have not argued on appeal that the compensatory-damage award should have been reduced by fifteen percent to reflect the amount of comparative negligence attributed to Paiz or that each Defendant's liability should have been adjusted to reflect the percentages of fault attributed to by the jury. Accordingly, we hold that both sides have conceded the correctness of the trial court's treatment of the jury's award as grounded in breach of contract and not as damages for commission of one or more torts. *See* SCRA 1986, 12–213 (Repl.Pamp.1992) (arguments must be presented in appellate briefs in order to be considered by appellate court); *Thorp v. Cash (In re Ferrill)*, 97 N.M. 383, 393, 640 P.2d 489, 499 (Ct.App.1981) (appellate review of jury instructions is waived when party has not objected to instructions at trial and has not raised issue in appellate briefs), *cert. quashed*, 98 N.M. 51, 644 P.2d 1040 (1982).

State Farm maintains that submission of the negligence claims confused and prejudiced the jury, but we do not see how such confusion or prejudice is manifested in the verdict. The jury found that State Farm had breached its contract with the Paizes and, pursuant to the damages instruction on that claim, awarded them all the damages they claimed: the cost of replacing the burned building, plus debris removal costs and the value of personal property destroyed in the fire. To this the court added prejudgment interest (amounting to almost one-fourth of the compensatory-damage award), which, together with the damages awarded by the jury, put the Paizes in a position similar to that which they would have occupied had State Farm initially paid the claim. State Farm has not presented us with anything in the record suggesting that the damages awarded by the jury were disproportionate to the loss caused by its breach of contract or that the award of damages for the breach was in any way affected by submission of these other claims. *See Britton v. Boulden*, 87 N.M. 474, 475, 535 P.2d 1325, 1326 (1975) ("It must be presumed that the jury understood and complied with the court's instructions."). Accordingly, we do not reach the issue of whether submission to the jury of claims founded on negligence was erroneous, because if there was error it was purely academic. In this connection, it is worth recalling the words of Rule 61 (entitled "Harmless Error") of our Rules of Civil Procedure:

> No error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

SCRA 1986, 1–061 (Repl.Pamp.1992). *See also Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 26, 766 P.2d 280, 286 (1988) ("In reviewing alleged errors relating to jury instructions, this Court will consider whether all of the instructions, when read and considered together, fairly present the issues and the law applicable thereto."), *cert. denied*, 490 U.S. 1109, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989).

We therefore affirm the jury's compensatory-damage award, along with the court's judgment thereon (which included prejudgment interest and costs), against State Farm.

### III.

■ Defendants (primarily Ellsworth) next argue that the trial court should not have permitted the jury to determine the claims of Ellsworth's negligent misrepresentation and negligent failure to obtain coverage, especially since the jury found that Tract B was covered under the Paizes' policy with State Farm. Ellsworth makes a similar argument concerning the jury's finding that he violated the Unfair Practices Act by making false or misleading representations in connection with his sale of insurance to the Paizes that tended to or did deceive them.[3] We agree. The claim of negligent failure to obtain coverage presupposes that there was no coverage. Since the jury determined that Tract B was in fact covered, the claim of negligent failure to obtain coverage fails. Similarly, the negligent misrepresentation claim is predicated on statements by Ellsworth which led Paiz to believe that the building on Tract B was covered. Once the jury found that Tract B was covered, these representations could no longer be regarded as misrepresentations, because they were accurate. The same logic also defeats the Unfair Practices Act claim.

Plaintiffs attempt to avoid the force of this logic by pointing to the court's instruction outlining the elements of their claim for breach of contract, under which the jury was told that Plaintiffs could prevail on their claim if the jury found either that their policy of insurance covered the office building or that State Farm was estopped from claiming that it did not. Plaintiffs argue that Ellsworth (or State Farm) *negligently* misrepresented that the building was covered and assert that among the actions creating the estoppel were the negligent misrepresentations that there was coverage. Accordingly, Plaintiffs contend, the jury properly found that these negligent misrepresentations were the proximate cause of Plaintiffs' loss—regardless of whether the damages were awarded in contract or in tort. Thus, Plaintiffs continue, the judgment against Ellsworth was correctly grounded in his negligent misrepresentation of the existence of coverage. Plaintiffs rely on essentially the same argument in support of their position, reviewed later in this opinion, that the punitive-damage award against State Farm should be affirmed: If State Farm, through its agent Ellsworth, negligently misrepresented that the office building was covered, and if (as the jury found) that negligence was "gross," then the punitive-damage award is properly supported by Defendants' negligence, entirely apart from State Farm's breach of contract.

We find several difficulties with Plaintiffs' position. First, they overlook the fact that the court's instruction that the jury could find coverage on the office building through estoppel expressly tied the estoppel claim to State Farm's actions in "paying a claim for theft on that property in 1986, and agreeing to pay a claim for vandalism on that property in 1989." Thus, while the jury might very well have determined that coverage existed as a result of estoppel, that determination (if made) was based on State Farm's acts in paying or agreeing to pay claims for damage to the property, not on any misrepresentations of Ellsworth, whether negligent or not.

Second, the court instructed the jury that to find Ellsworth liable for negligent misrep-

---

**3.** Ellsworth was thus charged with violating Section 57–12–2(C)(5), which read (at the time the allegedly misleading representations were made) as follows:

    C. "unfair or deceptive trade practice" means any false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services, in the extension of credit or in the collection of debts by any person in the regular course of his trade or commerce,

which may, tends to or does deceive or mislead any person and includes:

    . . . .

    (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have . . . .

This statute, in virtually identical form, is currently compiled as NMSA 1978, § 57–12–2(D)(5) (Cum.Supp.1993).

resentation it had to find that he made an *untrue statement* regarding the policy of insurance issued by State Farm to the Paizes. Similarly, in its general instruction on negligent misrepresentation (following SCRA 1986, 13–1632 (Repl.Pamp.1991) (UJI Civil 13–1632)), the court told the jury that "[a] party is liable for damages proximately caused by his negligent *and* material representation[,]" and that "[a] material representation is an *untrue statement* which a party intends the other party to rely on and upon which the other party did in fact rely." (Emphasis added.) Plaintiffs' only claim that Ellsworth made a negligent misrepresentation was that he misled them into believing that the office building was covered.[4] But Ellsworth's representations along these lines were not untrue or misleading because, under the jury's finding, the office building was in fact covered.

Third, as we have seen, the court's judgment in effect resolved, insofar as State Farm was concerned, any arguable inconsistency between the jury's findings (a) that the property was covered and (b) that State Farm (through its agent Ellsworth) had made one or more negligent misrepresentations that misled the Paizes into believing that there was coverage when in fact there was not. The court's judgment against State Farm clearly adopted the theory that State Farm had breached its contract and was liable for all of the compensatory damages, as requested and proved by Plaintiffs and as found by the jury. Insofar as Ellsworth was concerned, the court's judgment was based either on the jury's finding of negligent misrepresentation or on its finding of violation of the Unfair Practices Act, or on both such findings; but since there was no misrepresentation or misleading practice, the judgment against Ellsworth cannot stand. Further, to the extent that the judgment against Ellsworth is based on negligence, it is inconsistent with the court's failure to adjust it for State Farm's and Paiz's comparative negligence.

We therefore reverse the trial court's judgment insofar as it awards damages against Ellsworth. Additionally, on Plaintiffs' cross-appeal, reversal of the judgment as to Ellsworth's violation of the Unfair Practices Act requires affirmance of the trial court's refusal to award attorney's fees under that Act.

## IV.

■ Defendants also attack the trial court's order granting Plaintiffs' motion in limine precluding Defendants from introducing evidence implicating Paiz in the fire that destroyed the office building. However, Defendants' failure to provide a transcript of the hearing on that motion, coupled with their failure to inform this Court of the evidence presented to the trial court at the hearing and the basis for the court's ruling on the motion, prevents meaningful review of this issue. *See* SCRA 1986, 12–213(A) (appellant's argument must contain citations to appropriate portions of record); *State v. Hoxsie,* 101 N.M. 7, 9, 677 P.2d 620, 622 (1984) (appellant has burden of providing record sufficient to justify reversal), *overruled on other grounds by Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 731, 779 P.2d 99, 108 (1989). Defendants have also failed to demonstrate that granting the motion constituted reversible error. *See Hoxsie,* 101 N.M. at 9, 677 P.2d at 622 ("The admission [of evidence] is within the discretion of the trial court. Defendant has the burden of showing [error or] an abuse of that discretion." (citations omitted)); *Allen v. Amoco Prod. Co.,* 114 N.M. 18, 22, 833 P.2d 1199, 1123 (Ct.App.1992) (appellant has burden of "clearly demonstrating that the trial court committed error"). We therefore will not review whether the trial court committed error in granting the motion in limine.

## V.

Finally, State Farm argues that the award of punitive damages, based on a finding that it acted with gross negligence, should be

---

4. Plaintiffs acknowledge that their Unfair Practices Act claim against Ellsworth was based on essentially the same theory—that Ellsworth mis-

led them into believing that the property was covered when it was not.

reversed. We agree, for the reasons that follow.

The trial court directed a verdict against Plaintiffs on the issue of whether State Farm had acted with bad faith. Plaintiffs have not appealed that decision, nor have they raised the issue under SCRA 1986, 12–201(C) ("An appellee may, without taking a cross-appeal ..., raise issues on appeal for the purpose of enabling the appellant court to affirm, or raise issues for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from."). They have thus conceded the correctness of the trial court's ruling. *See Watkins v. Local School Board,* 88 N.M. 276, 278, 540 P.2d 206, 208 (1975) ("[A] party ... who does not appeal is presumed to be satisfied with the judgment rendered by the court below."). The same is true with respect to the court's rulings dismissing Plaintiffs' claim for punitive damages against Ellsworth and refusing to submit to the jury the other possible grounds under UJI Civil 13–1827 (*see supra* note 1) for a punitive-damage award against State Farm.

■ As discussed above, Plaintiffs recovered their compensatory damages under a theory of breach of contract. With sparse exception, this Court consistently has held that an award of punitive damages in a breach-of-contract case must be predicated on a showing of .bad faith, or at least a showing that the breaching party acted with reckless disregard for the interests of the nonbreaching party. *See, e.g., United Nuclear Corp. v. Allendale Mut. Ins. Co.,* 103 N.M. 480, 485, 709 P.2d 649, 654 (1985) ("To assess punitive damages for breach of an insurance policy there must be evidence of bad faith or malice in the insurer's refusal to pay the claim."); *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 102 N.M. 28, 30–31, 690 P.2d 1022, 1023–25 (1984) (unless ·negligence by insurance company rises to level of

bad faith, it cannot give rise to damages other than those arising from breach of contract); *Hood v. Fulkerson,* 102 N.M. 677, 680, 699 P.2d 608, 611 (1985) ("Punitive damages [for breach of contract] cannot be established by mere negligence.... 'Punitive or exemplary damages may be awarded only when the conduct of the wrongdoer [is] maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard to the plaintiffs' rights.'" (quoting *Loucks v. Albuquerque Nat'l Bank,* 76 N.M. 735, 747, 418 P.2d 191, 199 (1966))); *Green Tree Acceptance, Inc. v. Layton,* 108 N.M. 171, 174, 769 P.2d 84, 87 (1989) (same; quoting *Hood* and *Loucks* ). In *Construction Contracting & Management, Inc. v. McConnell,* 112 N.M. 371, 375, 815 P.2d 1161, 1165 (1991), we said:

> In New Mexico, it is well settled that because the limited purpose of punitive damages is to punish and deter persons from certain conduct, there must be some evidence of a culpable mental state. Certainly the mere breach of a contract does not imply any basis for punitive damages without evidence of such a culpable mental state or other form of overreaching, malicious, or wanton conduct. [Citations omit- . ted.] [5]

■ As something of an exception to this line of authority, we previously have held that an insurance carrier is liable for punitive damages if it fails to exercise even slight care in discharging its contractual obligations to its insured. In holding that the insurer's utter failure to exercise care for the interests of its insured would support submission of the issue of punitive damages for gross negligence, we noted in *Jessen v. National Excess Insurance Co.,* 108 N.M. 625, 776 P.2d 1244 (1989), that "punitive damages were sought exclusively for reckless *or* grossly negligent conduct." *Id.* at 627, 776 P.2d at 1246 (emphasis added).[6] *See* UJI Civil 13–1827

**5.** We reaffirmed this standard only a few months ago in *Flores v. Baca,* 117 N.M. 306, 312–13, 871 P.2d 962, 968–69 (1994) (reversing directed verdict against punitive damages in breach-of-contract case when jury could have determined that breaching party, a funeral home, represented that it would embalm a body and fraudulently led a family to believe that body was fully em-

balmed—"an intentional act without just cause or excuse, with knowledge that the act itself was wrong").

**6.** Subsequently, in *Jackson National Life Insurance Co. v. Receconi,* 113 N.M. 403, 419, 827 P.2d 118, 134 (1992), we remarked that our statement in *Jessen* that the defendant insurer

(adopting and defining "gross negligence" as one basis for awarding punitive damages). In *Romero v. Mervyn's*, 109 N.M. 249, 255 n. 3, 784 P.2d 992, 998 n. 3 (1989), we distinguished our policy regarding punitive damages in contract cases, generally, from our policy regarding punitive damages for breach of insurance contracts, specifically. However, to reaffirm that this Court has not lost sight of the limited purpose of punitive damages—to punish and deter persons from conduct manifesting a "culpable mental state"—we now disavow the proposition that in a contract case, including one involving an insurance contract, punitive damages may be predicated solely on gross negligence. In addition to, or in lieu of, such negligence there must be evidence of an "evil motive" or a "culpable mental state."

A mental state sufficient to support an award of punitive damages will exist when the defendant acts with "reckless disregard" for the rights of the plaintiff—i.e., when the defendant *knows* of potential harm to the interests of the plaintiff but nonetheless "utterly fail[s] to exercise care" to avoid the harm. By contrast, a defendant acting with gross negligence—which UJI Civil 13–1827 defines as a failure to exercise even slight care—cannot, solely because the defendant acted with such negligence, be regarded as having a culpable or "evil" state of mind. *See* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 34, at 212 (5th ed. 1984) ("[M]ost courts consider that 'gross negligence' falls short of a reckless disregard of the consequences, and differs from ordinary negligence only in degree, and not in kind.").

We note that the position we now reaffirm comports with the view endorsed by the authorities we have encountered in the area of damages. *See, e.g., id.* § 2, at 9–10 (for an award of punitive damages, "[t]here must be ... such a *conscious* and *deliberate* disregard of the interests of others that the conduct may be called willful or wanton. There is general agreement that, because it lacks this element, *mere negligence is not enough,*

even though it is so extreme in degree as to be characterized as 'gross'...." (emphasis added; footnotes omitted)); 1 Dan B. Dobbs, *Dobbs' Law of Remedies* § 3.11(2), at 472 (2d ed. 1993) ("[I]n spite of the 'gross negligence' terminology, the courts seem largely agreed in practice that bad conduct and bad states of mind are both required to justify punitive damages."); Restatement (Second) of Torts § 908 (1979) ("Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."); Charles T. McCormick, *Handbook of the Law of Damages* § 79, at 280–81 (1935):

> Since [punitive] damages are assessed for punishment and not for reparation, *a positive element of conscious wrongdoing is always required.* It must be shown either that the defendant was actuated by ill will, malice, or evil motive ..., or by fraudulent purposes, or that he was so wanton and reckless as to evince a *conscious disregard* of the rights of others. "Gross negligence" is a somewhat ambiguous expression. In the sense of extreme carelessness merely, it would probably not suffice, but only when it goes further and amounts to *conscious indifference to harmful consequences.* [Emphasis added; footnotes omitted.]

Our position also corresponds with the approach taken by most states. *See, e.g., Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986) (in banc) (stating, in insurance case where insured sued insurer for breach of contract: "In deciding whether punitive damages are awardable, the inquiry should be focused upon the wrongdoer's mental state.... The wrongdoer [insurer] must be *consciously aware* of the wrongfulness or harmfulness of his conduct and yet continue to act in the same manner in deliberate contravention to the rights of the victim [insured]." (emphasis added)); *Tuttle v. Raymond*, 494 A.2d 1353, 1360–61 (Me.1985) ("It is generally accepted that mere negligence cannot support an award of punitive damages.... Whatever

---

"utterly failed to exercise care for the interests of the insured in denying or delaying payment on an insurance policy" entailed a "reckless disre-

gard" standard (not a "gross negligence" standard) for upholding an award of punitive damages.

qualitative difference exists between mere negligence and 'gross' negligence, it is insufficient to justify allowing punitive damages based upon the latter class of conduct.").

We also observe that the concept of gross negligence, described by Prosser and Keeton as "so nebulous" and having "no generally accepted meaning," Keeton, et al., *supra*, § 34, at 212, and as "a term of ill-defined content," *id.* § 2, at 10, is a legal anachronism in New Mexico. This Court formally abolished the distinction between ordinary and gross negligence when it adopted the doctrine of comparative negligence. *Scott v. Rizzo*, 96 N.M. 682, 687, 634 P.2d 1234, 1239 (1981) ("[A]bolished is the distinction between ordinary and gross negligence."); *see also Dunleavy v. Miller*, 116 N.M. 353, 358, 862 P.2d 1212, 1217 (1993) (same). In *Govich v. North American Systems, Inc.*, 112 N.M. 226, 233, 814 P.2d 94, 101 (1991), this Court stated that "New Mexico courts never have recognized degrees of negligence. Rather, the standard in all cases has been 'ordinary care under the circumstances.'" Consistency requires us to reverse an award of punitive damages that is based on a legal concept we no longer recognize as valid.

■ Finally, as particularly applicable to a claim for punitive damages in a breach-of-contract case, we add that "contract law is, in its essential design, a law of strict liability, and the accompanying system of remedies operates without regard to fault." 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 12.8, at 190 (1990); *see also Patton v. Mid-Continent Sys., Inc.*, 841 F.2d 742, 750 (7th Cir.1988) ("[L]iability for breach of contract is, prima facie, strict liability. That is, if the promisor fails to perform as agreed, he has broken his contract even though the failure [was] in no way blameworthy."). As a general principle, the purpose of contract law is to compensate the nonbreaching party for the damages caused by the breaching party's nonperformance. *Mervyn's*, 109 N.M. at 257, 784 P.2d at 1000 (discussing "[t]he general rule limiting recovery in contract case[s]

to compensatory damages"). The amount of recovery should not depend on the manner in which the contract was breached, and the nonbreaching party should not be able to extract an extra bonus from a breach characterized by a high degree of fault or resulting from a low degree of care. "It is a fundamental tenet of the law of contract remedies that, regardless of the character of the breach, an injured party should not be put in a better position than had the contract been performed." Farnsworth, *supra*, § 12.8, at 189–90; *see also* 3 Arthur L. Corbin, *Corbin on Contracts* § 606, at 647–48 (1960) ("[O]ne is held responsible for harm to others if it is caused by his 'folly' or his negligent mistake, but his responsibility need not be carried so far as to permit others to profit by reason of his mistake.").

■ We have entertained a narrow exception to this general rule by penalizing conduct that constitutes a "wanton disregard" for the nonbreaching party's rights, or "bad faith," with an award of punitive damages. *See Mervyn's*, 109 N.M. at 256–59, 784 P.2d at 999–1002 (upholding jury's award of punitive damages when agent made promise knowing that his employer would not be able to perform). We have facilitated this concept by implying, in all contracts, a covenant of good faith and fair dealing:

> Whether express or not, every contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract. The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party.

*Continental Potash, Inc. v. Freeport–McMoran, Inc.*, 115 N.M. 690, 706, 858 P.2d 66, 82 (1993) (citation omitted), *cert. denied*, —— U.S. ——, 114 S.Ct. 1064, 127 L.Ed.2d 383 (1994). However, the implied covenant of good faith and fair dealing protects only against bad faith—wrongful and intentional [7]

---

**7.** We note, however, that not all intentional breaches of contract may be deemed wrongful so as to give rise to a claim for punitive damages. *See McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 9,

791 P.2d 452, 460 (1990) ("The mere breach of a contract does not itself create a right to punitive damages; even if deliberate, the breach may be justified in some sense if the promisee can be

affronts to the other party's rights, or at least affronts where the breaching party is consciously aware of, and proceeds with deliberate disregard for, the potential of harm to the other party. The covenant has never, to our knowledge, been extended to protect against negligent conduct—no matter how grossly so. Simply put, in contracts there is no implied covenant to exercise "ordinary care," or even "slight care," and the fact that the breaching party may not have acted with ordinary or slight care is immaterial to the questions whether the contract has been breached and, if so, what damages should be awarded for the breach.

Accordingly, UJI Civil 13–1827 must be modified in accordance with this opinion. The award of punitive damages against State Farm is reversed.

### VI.

To summarize our rulings, the trial court's award of compensatory damages, prejudgment interest, and costs is affirmed as against State Farm but reversed as against Ellsworth. The court's refusal to award attorney's fees against Ellsworth under the Unfair Practices Act is affirmed. The award of punitive damages against State Farm is reversed.

**IT IS SO ORDERED.**

RANSOM, BACA, FRANCHINI and FROST, JJ., concur.

fully compensated for the loss and the benefit to the promisor from the breach may provide soci-