**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 20 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID SIPP, Reverend,

    Plaintiff-Appellant-Cross-Appellee,

v.

UNUMPROVIDENT
CORPORATION; PAUL REVERE
LIFE INSURANCE COMPANY,

    Defendants-Appellees-Cross-Appellants.

Nos. 03-2055 and 03-2066

(D. New Mexico)

(D.C. No. CIV-01-1418 LFG/DJS)

**ORDER AND JUDGMENT** [*]

Before **KELLY**, **HENRY**, and **McKAY**, Circuit Judges.

Plaintiff David Sipp left his position as a reverend with a New Jersey congregation due to asthma and depression. He applied for benefits under his disability insurance policy, issued by the Paul Revere Life Insurance Co., a subsidiary of defendant UNUMProvident Corporation (UNUM). Rev. Sipp's application for benefits was initially approved, but after he received a few

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

payments under the policy, UNUM informed him that his benefits would be terminated because he was no longer considered disabled. He then filed this action for breach of contract, unfair insurance practices, negligent misrepresentation, and malicious conduct justifying punitive damages. The district court granted Rev. Sipp's motion for summary judgment on the breach of contract claim and granted UNUM's motion for summary judgment on the unfair insurance practices, negligent misrepresentation, and punitive damages claims. Both parties now appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Rev. Sipp has been an ordained minister of the Christian Missionary Alliance for approximately twenty years. His last position was that of Senior Pastor in a New Jersey congregation and Chaplain for the Union County Sheriff's Office. He served in that position until early 2000.

In 1986, Rev. Sipp purchased a policy from the Paul Revere Life Insurance Co., a subsidiary of UNUM, insuring him against disability that would render him "unable to perform the important duties of [his] regular occupation." App. vol. I, at 98. This type of policy is known as an "own occupation" policy, as distinguished from an "any occupation" policy, because it allows the insured to

recover benefits if he cannot perform the duties of his *own* occupation, notwithstanding the fact that he might be able to perform the duties of *other* occupations.

Rev. Sipp began seeking medical treatment for asthma and depression in 1999, while still serving as a Senior Pastor in New Jersey. He initially submitted a claim for partial disability benefits to UNUM in January 2000. The attending physician statement submitted with his claim listed his primary diagnosis as asthma and his secondary diagnosis as stress-related depression. Effective April 1, 2000, Rev. Sipp resigned from his position as Senior Pastor and began claiming total disability. Initially, UNUM determined that Rev. Sipp qualified for residual disability for the month of January 2000 and that he met the definition of total disability as of April 1, 2000. Based on these determinations, Rev. Sipp received some benefits under the policy.

In November 2000, Rev. Sipp and his wife moved from New Jersey to New Mexico in hopes that the drier air would help to alleviate Rev. Sipp's asthma. Shortly after arriving in New Mexico, Rev. Sipp began receiving treatment for his asthma from Dr. James Cardasis, who became his primary care physician. The higher altitude and drier air caused Rev. Sipp's asthma to improve significantly, and Dr. Cardasis submitted an attending physician statement to UNUM stating that Rev. Sipp would be unable to work in his occupation through January 31,

2001. App. vol. II, at 291. Dr. Cardasis "d[i]dn't know yet" when Rev. Sipp "could resume some work," and he indicated that he was "awaiting old records" before he could comment. *Id.* The statement listed the nature of Rev. Sipp's illness as asthma, chest pains, and pneumonia, with no mention of depression or any other mental illness. Dr. Cardasis did not provide UNUM with any information regarding Rev. Sipp's depression or resulting psychological impairment, nor did UNUM inquire about Rev. Sipp's psychological health.

In early 2001, Rev. Sipp's claim was reviewed by a UNUM nurse consultant and UNUM consulting pulmonologist, Dr. Alfred Kaplan. In April 2001, Dr. Kaplan called Dr. Cardasis to inquire about Rev. Sipp's prognosis. Dr. Cardasis informed Dr. Kaplan that Rev. Sipp did not have any limitations "from the asthmatic point of view" that would prevent him from returning to work. *Id.* at 310. In addition to the conversation with Dr. Cardasis regarding Rev. Sipp's asthma, UNUM asked a psychiatric case manager and a licensed psychologist to review Rev. Sipp's case file. Both individuals concluded that Rev. Sipp's records did not contain sufficient evidence to support a finding of psychological impairment. The reviews showed that Rev. Sipp had sought some treatment for mental health issues in the past, including seeing a licensed clinical social worker between September 1999 and May 2000, and seeing a counselor between February 2001 and April 2001. The reviews also revealed that Rev. Sipp did not take

-4-

medication for mental health symptoms and did not receive any mental health treatment whatsoever between May 2000 and February 2001, and that when he did seek treatment in 2001, it was in the form of family counseling with his wife and focused on "marital/parenting issues." App. vol. I, at 133.

In May 2001, UNUM informed Rev. Sipp that it was ceasing disability payments under the policy. Rev. Sipp did not appeal UNUM's decision through its appeals process, despite being informed that he had a right to do so. He subsequently filed the instant action for 1) breach of contract, 2) unfair insurance practices, 3) negligent misrepresentation, and 4) punitive damages in New Mexico state court. UNUM removed the case to the District of New Mexico. Though the contract itself was signed in Massachusetts, neither party has contested the application of New Mexico law. *See* 1 ERIC MILLS HOLMES & MARK S. RHODES, APPLEMAN ON INSURANCE § 4.17, at 468 (2d ed. 1996) (noting that "[t]here is an increasing recognition that the forum has a vital interest in applying its own law, particularly where its residents may be concerned in some manner. If significant events have occurred there, the court may ignore the earlier doctrines (e.g., the law of the place of contracting controls) and apply the forum's law").

Rev. Sipp filed a motion for leave to file an amended complaint in June 2001; the district court denied the motion, finding that it was untimely and that the information needed to plead the new causes of action was available to Rev.

Sipp at the time he filed his original complaint. Rev. Sipp then filed a motion for partial summary judgment, and UNUM filed a cross-motion for partial summary judgment. The district court granted Rev. Sipp's motion for summary judgment on the breach of contract claim, finding that "[Rev.] Sipp is in fact disabled and that Plaintiffs breached their contract by finding otherwise." App. vol. II, at 422 (Dist. Ct. Memo. Op. & Order, dated Sept. 20, 2002). The court granted summary judgment to UNUM on the unfair insurance practices, negligent misrepresentation, and punitive damages claims. The court granted in part Rev. Sipp's motion for attorney fees, finding that Rev. Sipp, as the prevailing party, was entitled to fees but that the time billed by Rev. Sipp's attorney was not reasonable and should therefore be subject to a twenty-percent reduction in hours. Rev. Sipp recovered $33,448.00 in compensatory damages on his breach of contract claim and $51,868.80 in attorney fees.

Rev. Sipp now appeals, arguing that 1) the district court erred in refusing to consider his claim that UNUM committed a breach of contract by denying him access to documents; 2) the district court erred in refusing to consider his statutory claim for insurance bad faith; 3) the district court abused its discretion by denying his motion to file an amended complaint; and 4) the district court erred in refusing to submit the issue of punitive damages to the jury. UNUM cross-appeals, alleging that 1) the district court erred in granting summary

judgment to Rev. Sipp on the breach of contract claim; and 2) the district court abused its discretion in granting Rev. Sipp attorney fees.

## II. DISCUSSION

As many of the issues in this case ultimately turn on the question of contractual liability, we first consider whether the district court properly granted summary judgment to Rev. Sipp on his breach of contract claim. Next, we examine whether the district court erred in refusing to consider Rev. Sipp's alternative contractual claim (failure to provide documents as required by the contract) and his statutory unfair practices claim. We then examine whether the court abused its discretion by denying Rev. Sipp's motion to file an amended complaint. Finally, we turn to the issues of punitive damages and attorney fees.

### A. Summary Judgment on Rev. Sipp's Breach of Contract Claim

In its cross-appeal, UNUM argues that the district court erred in granting summary judgement to Rev. Sipp on his breach of contract claim. UNUM contends that significant issues of fact existed as to whether Rev. Sipp met the three-part definition of "totally disabled" for purposes of the policy, which defines "total disability" as being 1) "unable to perform the important duties of Your regular occupation;" 2) "not engaged in any other gainful occupation;" and 3) "under the regular and personal care of a Physician" as a result of injury or illness.

App. vol. I, at 98. Specifically, UNUM argues that fact issues existed regarding 1) whether Rev. Sipp's illness was of such a magnitude that he was unable to perform his duties as a result of it, and 2) whether Rev. Sipp was under the regular care of a physician for his disabling condition. *See* App. vol. I, at 98. UNUM argues that Rev. Sipp failed to provide "*any* admissible affidavit from a mental health provider concluding that [he] is or was unable to perform the duties of his occupation for mental health reasons after the discontinuance of his benefits," Aples' Br. at 22, and that the district court improperly relied on inadmissible evidence in granting summary judgment to Rev. Sipp. "Our summary judgment standard of review requires us to determine de novo whether there is any genuine disputed issue of material fact and whether the prevailing party was entitled to judgment as a matter of law." *See Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000). Summary judgment is only appropriate in cases in which there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

1. Disability Status

UNUM argues that even considering all the evidence "[Rev.] Sipp did not conclusively prove that he was totally disabled such that reasonable minds could not differ." Aples' Br. at 24. In support of his breach of contract claim, Rev. Sipp provided medical records from Dr. Jafet Gonzales, who treated Rev. Sipp in April

2001; a letter from Dr. Harry Linneman, a clinical psychologist who began treating Rev. Sipp in early 2002; and the reports of two experts, one a clinical psychologist and one a vocational evaluator. UNUM filed a motion to strike these records "as they have not been authenticated and constitute hearsay." App. vol. I, at 183. The district court denied the motion to strike and accepted authenticating affidavits that Rev. Sipp later provided. UNUM argues that this evidence is hearsay and that Rev. Sipp's affidavits did not allow admissibility under any exception to the hearsay rule. We need not decide whether the district court abused its discretion in denying UNUM's motion to strike, as we conclude that even if the evidence was admissible, it did not support summary judgment for Rev. Sipp. As UNUM's experts clearly disagreed with the above evidence that Rev. Sipp was totally disabled as a result of his depression, summary judgment was inappropriate.

The district court observed that "the record is replete with medical opinions indicating that Sipp's personality traits and psychological depression interfered with his ability to interact well with his congregation, in what everyone acknowledges is a high-stress job." App. vol. II, at 441. Furthermore, the court noted that "[t]he only contrary evidence comes from psychologists who did not examine Sipp and whose opinions are criticized by Plaintiff's consulting psychologist, who did examine Sipp." *Id.* at 439. Two UNUM experts determined that Rev. Sipp was not conclusively disabled, based on the documents in his

internal UNUM file. Consulting clinical psychologist Jennifer D. Lish conducted a review of all documents included in Rev. Sipp's UNUM file and concluded that "[t]his file does not contain sufficient evidence to document that the Insured's psychiatric symptoms rose to the level that would be expected to preclude occupational functioning." App. vol. I, at 135. Similarly, Ann Ward-Bennett, a psychiatric case manager who also reviewed Rev. Sipp's file, concluded that "there is no clear diagnostic formulation . . . to support a disabling condition other than an Adjustment Disorder with Mixed Anxiety and Depressed Mood. Nor does the information that has been submitted support a level of severity consistent with a compromising condition." *Id.* at 133.

However, generally speaking, summary judgment is not advisable in situations in which there is a conflict in expert testimony, even when the evidence leans one way. *See Zuchel v. Spinharney*, 890 F.2d 273, 275 (10th Cir. 1989) ("It makes no difference that [defendant]'s view of the evidence is supported by the majority of the witnesses whose testimony was submitted to the district court at the summary judgment stage. Neither we, nor the district court, are entitled to weigh evidence or pass on the credibility of witnesses in deciding summary judgment issues."); *see also Hudson Riverkeeper Fund, Inc. v. Atlantic Richfield Co.*, 138 F. Supp. 2d 482, 488 (S.D.N.Y. 2001) (noting that "where, as here, there are conflicting expert reports presented, courts are wary of granting summary

judgment"). Questions such as whether the insured is partially or totally disabled under a specific policy definition usually necessitate a jury determination, and "[c]ourts typically do not apply contract interpretation as a matter of law (absent a statute) to the determination of the insured's disability." 1 ERIC MILLS HOLMES & MARK S. RHODES, APPLEMAN ON INSURANCE § 1.27, at 138 (2d ed. 1996); *see also Olson v. Aetna Life Ins. Co.*, 171 So. 2d 548, 548 (Fla. Ct. App. 1965) (noting that "[t]he ultimate factual question in this case is whether the insured was totally disabled from performing his duties," and that while "[u]nder certain circumstances, the question of whether disability exists may be one of law, . . . more often this is a question of fact for determination by the jury.")

The fact that UNUM's contrary evidence came from non-treating physicians certainly may affect the credibility and weight of the evidence, but it does not justify discounting the evidence entirely. For example, in the Social Security disability context, an Administrative Law Judge charged with determining whether a claimant is disabled, "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not." 20 C.F.R. § 416.927(d)(1). In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), the Supreme Court applied the treating physician preference to the ERISA context, noting that "[a]s compared to consultants retained by a plan, it may be true that treating physicians, as a rule, have a greater opportunity to know

-11-

and observe the patient as an individual," and acknowledging the "concern that physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements." *Id.* at 832 (internal quotation marks omitted). The Court went on, however, to qualify the preference for the opinions of treating physicians: "But the assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration, or when a specialist engaged by the plan has expertise the treating physician lacks." *Id.*

A jury charged with determining whether Rev. Sipp was totally disabled might accord more weight to the opinions of treating physicians and psychologists than to the opinion of non-treating psychologists. But as it "[i]t is the jury's exclusive province to assess the credibility of witnesses and determine the weight to be given to their testimony," *Lamon v. City of Shawnee,* 972 F.2d 1145, 1159 (10th Cir. 1992), we will not decide whether an expert's opinion based on an examination of Rev. Sipp is entitled to more weight than that of a non-treating psychologist. We hold that such a conflict should not be resolved by summary judgment.

2. Regular and Personal Care of a Physician

-12-

UNUM also argues, in the alternative, that Rev. Sipp was not "under the regular and personal care of a Physician," as required by the terms of his disability insurance policy. *See* App. vol. I, at 98. UNUM contends that Rev. Sipp did not receive mental health treatment from a qualified provider between May 2000 and February 2001, and that after that time he saw a psychiatrist on only one occasion in February 2001, and then waited another eleven months before seeking psychological counseling. The district court rejected UNUM's suggestion that Rev. Sipp only went to see a psychiatrist when he thought he was in danger of losing his benefits. App. vol. II, at 440 (noting that "[t]here is some indication in the record that Sipp was initially reluctant to seek the help of a psychiatrist and resisted taking psychotropic medications, that his reluctance and resistance were symptoms of his depression and his personal techniques for dealing with it, and that he became aware, eventually, that he needed help with his problems and sought out diagnosis . . . and counseling").

Despite the fact that his visits to psychiatrists were infrequent at best, Rev. Sipp did seek other types of help. He met with a social worker, discussed his problems with a family counselor, and made Dr. Cardasis, his primary care physician in New Mexico, aware of his mental health issues. Significantly, Dr. Cardasis prescribed medication to treat his condition. The insurance policy defines a "physician" as "any licensed practitioner of the healing arts practicing

within the scope of his or her license." App. vol. II, at 258. This definition would include certain licensed social workers, counselors, and psychologists, who are trained in dealing with depression and other mental disorders. We therefore agree with the district court's finding that Rev. Sipp satisfied the "regular and personal care" component of the definition of total disability.

## B. Rev. Sipp's Alternative Breach of Contract Theory

In addition to arguing that UNUM committed breach of contract by ceasing disability benefits, Rev. Sipp also argues that UNUM committed breach of contract by refusing to allow him access to various documents. He asserts that UNUM had a contractual duty to provide him with the reports that formed the basis for their denial of benefits.

The district court found it unnecessary to consider this alternative breach of contract claim, holding that "having found as a matter of law that Sipp is in fact disabled and that Plaintiffs breached their contract by finding otherwise, [it] need not consider these alternative arguments for breach of contract." App. vol. II, at 442. On remand, Rev. Sipp may, of course, continue to pursue this theory of liability as an alternative to his other breach of contract theory.

## C. Rev. Sipp's Statutory Claim for Unfair Insurance Practices

Rev. Sipp argues that the district court should have considered his claim under the New Mexico Unfair Insurance Practice Act (UIPA), N.M. Stat. Ann. §

59A-16-1 to -30, and/or the New Mexico Unfair Practices Act (UPA), N.M. STAT. ANN. § 57-12-1 to -22, which would have allowed him the opportunity to recover "extra-contractual damages: punitive damages, statutory treble damages or actual damages otherwise available." Aplt's Br. at 20. The inherent authority of a district court to manage its own docket includes the discretion to determine which claims to consider. We review decisions relating to the court's management of its docket for abuse of discretion. *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002).

Rev. Sipp argues that he pled a claim for unfair insurance practices in his original complaint, though he admits that the complaint "was far from a model of clarity," Aplt's Br. at 23, and that even if the claim was not adequately pled in the complaint, it was pled in the Joint Initial Pre-Trial Report, thus giving UNUM adequate notice. First, he notes that the complaint "contained a Fourth Claim for Relief, captioned: 'Unfair Insurance Practices,'" and that the amount of damages claimed in the original complaint would have exceeded those allowable under a breach of contract theory, such that "UNUM was aware of statutory and extra-contractual claims." Aplt's Br. at 21 (citing App. vol. I, at 12-13).

In response, UNUM argues that the complaint did not provide sufficient notice of Rev. Sipp's claim, as it contained only vague allegations of "unfair insurance practices" with no citations to the UIPA or the UPA. UNUM further

asserts that Rev. Sipp's attempt to file an amended complaint suggests that he was aware that the claim was inadequately pleaded in the original complaint. Aples' Br. at 17 (arguing that "if Sipp felt his claims *had* been pled under these statutes there would have been no need to file an untimely Motion for Leave to add such causes of action").

Rule 8 of the Federal Rules of Civil Procedure sets forth the requirements for notice pleading, which include

> (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

FED. R. CIV. P. 8(a). As the Seventh Circuit has observed, "notice pleading requires the plaintiff to allege just enough to put the defendant on notice of facts providing a right to recovery and not to cite to the appropriate statute creating that right." *Brokaw v. Mercer County*, 235 F.3d 1000, 1023 n.19 (7th Cir. 2000).

Under the heading "Fourth Claim for Relief: Unfair Insurance Practices," Rev. Sipp's complaint described the specific conduct that he believed entitled him to relief, including UNUM's reliance on a telephone conversation with Rev. Sipp's physician as a basis for denying benefits; UNUM's implication "that a psychiatric illness is required for coverage, and that [Rev. Sipp] is experiencing a 'stressful life event' which is not covered;" and UNUM's failure "to provide any substantial

medical reasons in the letter of termination." App. vol. I, at 13. The complaint further stated that the above acts "do not comply with insurance trade standards of practice," and "violate statutory laws and regulations covering insurance practices." *Id.*

Rev. Sipp's complaint, while assuredly not a model of clarity, did provide a "short and plain statement of the claim," FED. R. CIV. P. 8(a), and alleged facts "sufficient to give the defendant[s] fair notice of what the claim is and the grounds on which it rests." *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 922 (10th Cir. 1992). Furthermore, UNUM's Notice of Removal suggests that it was aware of Rev. Sipp's statutory insurance bad faith claim, as the Notice explicitly stated that "[i]n the Complaint, Plaintiff has asserted three separate counts for breach of contract, *violations of the New Mexico Unfair Practices Act*, a claim for negligent misrepresentation, and a count asserting malicious conduct." App. vol. I, at 16 (emphasis added). We also note that the Initial Pretrial Report, jointly signed by the parties, included the contention that UNUM's actions constituted "unfair insurance practice prohibited by 59-16-20, NMSA." App. vol. I, at 34. Thus, we hold that Rev. Sipp's allegation satisfied Rule 8(a)(2). Because the parties have cited the acts somewhat interchangeably, we leave it up to the district court to determine whether to reinstate the UPA claim, the UIPA claim, or both statutory actions.

**D. Rev. Sipp's Motion for Leave to Amend**

Rev. Sipp argues that the district court should have allowed him to amend his complaint to add two new causes of action: a claim for bad faith in the claims handling process and a claim for the repudiation of the contract. He also sought leave to amend his complaint "to add a claim under the New Mexico Unfiar [sic] Practitc [sic] Act as well as the Unfair Insrucance [sic] Claims Practice Act," App. vol. I, at 46, but as we already determined in Section II.C that Rev. Sipp adequately pled (and, fortunately, adequately spell-checked) a statutory unfair practices claim in his original complaint, we need not address it here.

Rev. Sipp filed his original complaint in state court on November 20, 2001. The parties agreed that he would be allowed until April 11, 2002 to amend his complaint. He did not amend his complaint within that time frame, but then sought leave to amend his complaint on June 6, 2002. The district court denied Rev. Sipp's Motion for Leave to File a First Amended Complaint upon finding that "the motion is untimely, that the information necessary to plead the new causes of action was known to Plaintiff at the time the original complaint was filed, that Plaintiff offered no explanation for its delay in seeking this amendment, and that allowing this amendment would be prejudicial to Defendants." App. vol. I, at 73 (Order Denying Plaintiff's Motion for Leave to First Amended Complaint, filed July 11, 2002). "We review the district court's denial of a motion to amend a

-18-

complaint for abuse of discretion." *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001); *see also* FED. R. CIV. P. 15(a) ("[L]eave [to amend] shall be given freely when justice so requires.").

> Several factors are typically considered by the courts in determining whether to allow amendment of a complaint. These include whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had sufficient opportunity to state a claim and failed.

*Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990); *see also Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing "a showing of undue delay . . . , or undue prejudice to the opposing party, or futility of amendment, etc." as reasons to deny leave to amend a complaint).

"'[W]e have often found untimeliness alone a sufficient reason to deny leave to amend.'" *Hayes,* 264 F.3d at 1029 (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 799 (10th Cir.1998)); *see also Las Vegas Ice & Cold Storage*, 893 F.2d at 1185 ("Untimeliness alone may be a sufficient basis for denial of leave to amend. Contrary to plaintiff's assertion, prejudice to the opposing party need not also be shown."). Denial of leave to amend is particularly appropriate in cases in which the cause(s) of action were available to the plaintiff at the time that the original complaint was filed. *Id.* ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but

-19-

fails to include them in the original complaint, the motion to amend is subject to denial.")

Rev. Sipp argues that most of the cases in which leave to amend has been denied have involved substantially longer periods of delay, sometimes up to several years. His motion for leave to amend, in contrast, was filed less than a year after the original complaint and only two months after the expiration of the parties' agreed upon deadline for amending the complaint. While this is a shorter delay than in many of the cases in which leave to amend has been denied, the district court emphasized that the new causes of action were known to Rev. Sipp at the time the original complaint was filed and that Rev. Sipp gave "no justifiable reason for the delay." App. vol. I, at 74. The court also concluded that UNUM would be prejudiced by the amendment, as "[t]he discovery deadline expire[d] . . . a mere 8 days away" and "[a]llowing the extension would inevitably require reopening discovery and essentially starting this case anew, and would significantly delay the final deposition." *Id.*

While Rev. Sipp contends that he learned new information through depositions that made UNUM's degree of culpability more apparent and made him feel that the new claims were stronger than he previously realized, he admits that the claims could have been pled originally or that the amendments could have been requested earlier. Ultimately, it appears that the facts needed to support these

claims were known to Rev. Sipp at the time that the original complaint was filed. Taking into account the untimeliness of the motion, the potential prejudice to UNUM, and Rev. Sipp's concession that the motion could have been made sooner, we hold that the district court did not abuse its discretion when it denied Rev. Sipp's motion for leave to amend.

**E. Punitive Damages**

Rev. Sipp sought punitive damages based on UNUM's failure to investigate his claim, refusal to provide him with the documents on which they based the denial of benefits, and insinuation that he was forced out of his position as a result of a personal problem with a parishioner. The district court granted UNUM's cross-motion for summary judgment on punitive damages, concluding "[t]here is simply no evidence that Defendants acted maliciously or recklessly in their claims handling process." App. vol. II, at 447. Rev. Sipp argues on appeal that the court erred in granting summary judgment on the issue of punitive damages and that punitive damages should have been submitted to a jury. We review de novo a district court's determination concerning whether sufficient evidence existed to support punitive damages. *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003).

The parties disagree regarding the standard for punitive damages in New Mexico insurance cases. According to Rev. Sipp, "Under New Mexico law,

punitive damages may be awarded for conduct that is malicious, willful, reckless, wanton, fraudulent, or in bad faith. If sufficient evidence exists to prove any one of the enumerated mental states, the trial court is required to instruct the jury on punitive damages." Aplt's Br. at 11 (internal quotation marks and citations omitted). UNUM disagrees, arguing that "a showing of malice or other increased mental culpable state" is required in order for a plaintiff to recover punitive damages for breach of contract. Aples' Br. at 11.

The New Mexico Supreme Court recently clarified the standard for awarding punitive damages in breach of insurance contract cases. *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 232 (N.M. 2004). Though *Sloan* establishes a less stringent standard for punitive damages in insurance bad faith cases, the court explicitly distinguishes breach of contract cases and reaffirms the standard set forth in *Paiz v. State Farm Fire & Casualty Co.*, 880 P.2d 300 (N.M. 1994). In *Paiz*, the court reversed a punitive damage award in a breach of contract case, "disavow[ing] the proposition that in a contract case, including one involving an insurance contract, punitive damages may be predicated solely on gross negligence," and holding that "[i]n addition to, or in lieu of, such negligence there must be evidence of an 'evil motive' or a 'culpable mental state.'" *Id.* at 308.

As *Sloan* reiterates that punitive damages can only be awarded in a breach of contract case when there is an "evil motive" or "culpable mental state," we must

now turn to whether such evidence existed in this case. According to Rev. Sipp, evidence of the requisite mental state included: UNUM's implication that he was forced out of his job as a Senior Pastor after becoming involved in some sort of scandal with "a certain female parishioner," App. vol. I, at 188; UNUM's refusal to disclose or produce the psychological reports that formed the basis for the denial of benefits; and UNUM's failure to adequately investigate Rev. Sipp's disability claim. While UNUM's conduct is far from admirable, we agree with the district court's determination that "the evidence establishes that [UNUM's] representatives were simply doing their job, without any malicious intent. Whether or not they did their jobs as thoroughly and competently as they could have, [Rev. Sipp] has not shown that their actions rose to the level of malice or reckless conduct so as to justify punitive damages." App. vol. II, at 448 (internal citation and quotation marks omitted). We note, however, that Rev. Sipp may be entitled to punitive damages under the UPA, should he succeed on that claim. N.M. STAT. ANN. § 57-12-10 ("Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.").

**F. Attorney Fees**

The district court awarded Rev. Sipp $51,868.80 in attorney fees pursuant to N.M. STAT. ANN. § 39-2-1, which provides that

> [i]n any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim.

In their cross-appeal, UNUM argues that Rev. Sipp should not have been granted attorney fees because 1) his request for attorney fees was untimely, and 2) an award of attorney's fees under § 39-2-1 must be predicated on a finding of "unreasonableness" on the part of the insurance company. "We review the award of attorney's fees for abuse of discretion." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 968 (10th Cir. 2002).

1. Timeliness

UNUM contends that Rev. Sipp "never pled or requested fees under this statute [§ 39-2-1] until *after* the case was disposed of on summary judgment, which is certainly not a timely request." Aples' Br. at 27. The district court explicitly rejected "Defendants' argument that the Court should deny attorney fees because a request was not specifically pled under the statute, and is therefore, untimely." App. vol. II, at 460. Moreover, as Rev. Sipp points out, the New Mexico Court of Appeals has previously rejected a defendant's challenge to an award of attorney's fees based on the plaintiff's failure to cite § 39-2-1 until after

-24-

the fee petition was before the court. *See O'Neel v. USAA Ins. Co.*, 41 P.3d 356, 365 (N.M. Ct. App. 2002) (awarding fees under § 39-2-1 where "the record reveals that [the plaintiff] did request an alternative award of attorney fees under Section 39-2-1 orally and in writing before the court made its final ruling on attorney fees"). UNUM does not provide any case law in support of its position that Rev. Sipp's motion for attorney fees was untimely. In the absence of any supporting authority to the contrary, we hold that the district court did not abuse its discretion in finding that Rev. Sipp's request for attorney's fees was timely filed.

2. Unreasonableness

UNUM's next argument is that an award of attorney's fees under § 39-2-1 must be predicated on a finding of unreasonableness. Section 39-2-1 states:

> In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and costs of the action *upon a finding by the court that the insurer acted unreasonably in failing to pay the claim.*

N.M. STAT. ANN. § 39-2-1 (emphasis added). According to UNUM, the court found that UNUM was "wrong" without ever making any specific finding regarding whether it was "unreasonable." Aples' Br. at 27.

On remand, the district court should evaluate making more specific findings as to the reasonableness or unreasonableness of UNUM's actions and to consider the availability, if any, of attorney fees under the UIPA, N.M. STAT. ANN. § 59A-

-25-

16-30, and/or the UPA, N.M. Stat. Ann. § 57-12-10(c).

### III. CONCLUSION

Given the conflicting testimony of experts regarding Rev. Sipp's disability, we must REVERSE and REMAND the district court's grant of summary judgment in favor of Rev. Sipp on the breach of contract claim. In connection with that reversal, the district court should reconsider Rev. Sipp's unfair practices claim under the UIPA and/or the UPA and the possibility of an award of punitive damages in connection with that claim. We also VACATE the award of compensatory damages and attorney fees and REMAND for further proceedings consistent with this opinion.

Entered for the Court,


Robert H. Henry
Circuit Judge