2004-NMSC-004

85 P.3d 230

**In re Joseph Edward Sloan, Debtor.**

**Joseph Edward SLOAN and Byron Z. Moldo, Chapter 7, Trustee, Plaintiffs–Appellants and Cross–Appellees,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee and Cross–Appellant.**

No. 27,928.

Supreme Court of New Mexico.

Jan. 20, 2004.

Tucker Law Firm, P.C., Steven L. Tucker, Santa Fe, NM, Eaton, Martinez, Hart & Valdez, P.C., Steven J. Vogel, Vigil & Vigil, P.A., Lisa K. Vigil, Albuquerque, NM, for Appellants and Cross–Appellees.

Guebert, Bruckner & Bootes, P.C., Terry R. Guebert, Donald G. Bruckner Jr., Ramona G. Bootes, Albuquerque, NM, for Appellee and Cross–Appellant.

## OPINION

CHÁVEZ, Justice.

{1} In this insurance-bad-faith case, arising from an insurance company's failure to settle a third-party lawsuit against its insured, we are asked to clarify whether a culpable mental state in addition to bad faith is required for the imposition of punitive damages. The following question was certified to us by the United States Court of Appeals for the Tenth Circuit, in accordance with Rule 12–607 NMRA 2003:

> Is an instruction for punitive damages required in every insurance bad faith case in which the plaintiff has produced evidence supporting compensatory damages as suggested by [UJI 13–1718 NMRA 2003], or is the New Mexico Court of Appeals correct that subsequent New Mexico Supreme Court authority requires a culpable mental state beyond bad faith for imposition of punitive damages in insurance bad faith cases? *Teague–Strebeck Motors, Inc. v. Chrysler Ins. Co.*, [1999–NMCA–109, ¶¶ 76–90, 127 N.M. 603, 985 P.2d 1183].

*Sloan v. State Farm Mut. Auto. Ins. Co. (In re Sloan)*, 320 F.3d 1073, 1073 (10th Cir. 2003).

{2} Exercising jurisdiction under NMSA 1978, § 39–7–4 (1997), we answer that under New Mexico law, a punitive-damages instruction should be given to the jury in every common-law insurance-bad-faith case where the evidence supports a finding either (1) in failure-to-pay cases (those arising from a breach of the insurer's duty to timely investigate, evaluate, or pay an insured's claim in good faith), that the insurer failed or refused to pay a claim for reasons that were frivolous or unfounded, or (2) in failure-to-settle cases (those arising from a breach of the insurer's duty to settle a third-party claim against the insured in good faith), that the insurer's failure or refusal to settle was based on a dishonest or unfair balancing of interests. An insurer's frivolous or unfounded refusal to pay is the equivalent of a reckless disregard for the interests of the insured, and a dishonest or unfair balancing of interests is no less reprehensible than reckless disregard, which has historically justified an award of punitive damages. To ensure the jury has found a culpable mental state before awarding punitive damages, we modify UJI 13–1718 to reflect that punitive damages may only be awarded when the insurer's conduct was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton.

## I.

{3} This matter comes to us in the course of an appeal from a jury trial in federal district court. The trial court granted Defendant State Farm's motion for judgment as a matter of law on Plaintiffs' claim for punitive damages against Defendant for bad-faith failure to settle. *Sloan*, 320 F.3d at 1074. The court submitted Plaintiffs' insurance-bad-faith claims to the jury without the instruction for punitive damages, UJI 13–1718 NMRA 2003. Even though Plaintiffs' claims primarily involved bad-faith failure to settle, the court included in its instructions to the jury both the bad-faith standard in a failure-to-settle action, that is, a dishonest or unfair balancing of interests (Jury Instruction No. 6, below), *and* the bad-faith standard in a first-party failure-to-pay action, that is, any frivolous or unfounded refusal to pay (Jury Instruction No. 8, below). Because the trial court gave the jury both instructions, we shall address the standard for punitive damages under both causes of action. The jury instructions relevant to Plaintiffs' bad-faith claim given at trial were:

### Jury Instruction No. 6

A liability insurance company has a duty to timely investigate and fairly evaluate the claim against its insured, and to accept reasonable settlement offers within policy limits.

An insurance company's failure to conduct a competent investigation of the claim and to honestly and fairly balance its own interests and the interests of the insured in rejecting a settlement offer within policy limits is bad faith. If the company gives equal consideration to its own interests and the interests of the insured and based on honest judgment and adequate information does not settle the claim and proceeds to trial, it has acted in good faith.

*See* UJI 13–1704 NMRA 2003.

### Jury Instruction No. 8

An insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded. An insurance company does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy.

In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair investigation and evaluation of the claim.

A failure to timely investigate, evaluate or pay a claim is a bad faith breach of the duty to act honestly and in good faith in the performance of the insurance contract.

*See* UJI 13–1702 NMRA 2003.

{4} The jury found that State Farm acted in bad faith in its dealings with Plaintiffs and that its bad faith proximately caused Plaintiffs' damages. The jury awarded Plaintiffs $600,000 in compensatory damages, later reduced to $540,000 on motion for remittitur. Plaintiffs appealed to the United States Court of Appeals for the Tenth Circuit, arguing that under New Mexico law, where there is sufficient evidence to submit an insurance-bad-faith claim to the jury, the jury must also receive an instruction on punitive damages. The Court of Appeals then certified the above question to us because it was unclear under New Mexico law whether in an insurance-bad-faith action, a finding of bad faith, without an additional finding of a culpable mental state, permitted an award of punitive damages.

{5} This case presents an opportunity to assess the New Mexico Court of Appeals' holding in *Teague–Strebeck* that an award of punitive damages in an insurance-bad-faith case requires a culpable mental state in addition to the bad faith required for compensatory damages. *See Teague–Strebeck Motors, Inc. v. Chrysler Ins. Co.*, 1999–NMCA–109, ¶ 78, 127 N.M. 603, 985 P.2d 1183. Although we denied the petition for certiorari in that case, such denial in itself expresses no opinion on the merits of the case. *See State v. Breit*, 1996–NMSC–067, ¶ 13, 122 N.M. 655, 930 P.2d 792. In our denial of certiorari in *Teague–Strebeck*, we avoided having to reconcile various statements we have made about the standard for punitive damages in insurance-bad-faith claims. We now take the opportunity to clarify the law on this point.

{6} For the reasons that follow, we conclude that under New Mexico law, bad-

faith conduct by an insurer typically involves a culpable mental state, and therefore the determination whether the bad faith evinced by a particular defendant warrants punitive damages is ordinarily a question for the jury to resolve. To the extent *Teague–Strebeck* would, in every insurance-bad-faith case, require a showing of an additional culpable mental state to permit an instruction on punitive damages, *Teague–Strebeck* is overruled. In so holding, we reaffirm our statement in *Jessen v. National Excess Insurance Co.,* 108 N.M. 625, 627, 776 P.2d 1244, 1246 (1989) that "[b]ad faith supports punitive damages upon a finding of entitlement to compensatory damages." Accordingly, an instruction on punitive damages will ordinarily be given whenever the plaintiff's insurance-bad-faith claim is allowed to proceed to the jury. We do, however, somewhat limit the per se *Jessen* rule by affording the trial court the discretion to withhold a punitive-damages instruction in those rare instances in which the plaintiff has failed to advance any evidence tending to support an award of punitive damages.

## II.

{7} *Teague–Strebeck* held that in insurance-bad-faith cases, New Mexico requires "the presence of aggravated conduct beyond that necessary to establish the basic cause of action in order to impose punitive damages." 1999–NMCA–109, ¶ 78, 127 N.M. 603, 985 P.2d 1183. In reaching this conclusion, the *Teague–Strebeck* court analyzed two New Mexico Supreme Court rulings, *Paiz v. State Farm Fire & Casualty Co.,* 118 N.M. 203, 880 P.2d 300 (1994) and *Allsup's Convenience Stores, Inc. v. North River Insurance Co.,* 1999–NMSC–006, 127 N.M. 1, 976 P.2d 1, and determined from the language of those opinions that this Court intended to raise the standard of conduct required for an award of punitive damages in insurance-bad-faith cases. The *Teague–Strebeck* court determined that *Paiz* and *Allsup's* "superseded" the *Jessen* formulation and that "New Mexico now requires a showing of a culpable mental element to allow imposition of punitive damages." *Teague–Strebeck,* 1999–NMCA–109, ¶ 90, 127 N.M. 603, 985 P.2d 1183.

{8} In its original opinion, the *Teague–Strebeck* court affirmed the trial court's denial of the plaintiffs' claim for punitive damages arising from an insurance-bad-faith claim. *Id.* ¶¶ 70–73. The plaintiffs had argued that they were automatically entitled to punitive damages once compensatory damages were awarded and that the trial court therefore misapplied the legal standard for the award of punitive damages. *Id.* ¶¶ 71–72. *Teague–Strebeck* interpreted *Paiz* as requiring evidence of "an evil motive or a culpable mental state," in addition to bad faith, for a plaintiff to be entitled to punitive damages. Accordingly, it held the trial court did not abuse its discretion by refusing punitive damages. *Id.* ¶¶ 72–73.

{9} In a separate published order on rehearing, appended to the original published opinion, the *Teague–Strebeck* court reinforced its initial holding, and again relied on *Paiz* and *Allsup's* for the proposition that "there is a real distinction between 'bad faith' sufficient to support an award of compensatory damages and 'bad faith' meriting exemplary damages." *Id.* ¶ 85. The *Teague–Strebeck* court also noted that UJI 13–1718, as it currently stands, "clearly contemplates the giving of a punitive damages instruction in *every* bad faith case submitted to a jury." *Id.* ¶ 82 n. 1. The court then stated, "Given the holding in *Paiz,* and the language in *Allsup's,* upon which we rely, it would seem appropriate to reconsider this approach." *Id.*

{10} As we reconsider UJI 13–1718 and the law of punitive damages in insurance-bad-faith claims, we first consider the analyses of *Paiz* and *Allsup's* in *Teague–Strebeck.*

### A.

{11} The *Teague–Strebeck* court began its analysis of *Paiz* by characterizing it as "a first party insurance-bad-faith case." 1999–NMCA–109, ¶ 79, 127 N.M. 603, 985 P.2d 1183. Although *Paiz* began as an insurance-bad-faith case, by the time it reached the appellate courts it was reduced to a breach-of-contract case. At the trial level the plaintiffs had filed claims sounding in negligence, insurance bad faith, and breach of contract.

Before submitting the case to the jury, however, the trial court directed a verdict against the plaintiffs with respect to their insurance-bad-faith claim. *Paiz*, 118 N.M. at 210, 880 P.2d at 307. The judge then submitted the case to the jury under a breach-of-contract theory and under the plaintiffs' tort claims of "negligent misrepresentation, negligent investigation, and negligent delay in making payment." *Id.* at 206, 880 P.2d at 303. The jury returned a verdict in favor of the plaintiffs. "[T]he trial judge viewed the damages awarded as arising from State Farm's breach of contract instead of from any of Defendants' various negligent acts." *Id.* at 207, 880 P.2d at 304. We agreed, holding the jury's award was "grounded in breach of contract and not as damages for commission of one or more torts." *Id.*

{12} Importantly, the claim of insurance bad faith was never raised as an issue on appeal. The plaintiffs did not appeal the directed verdict against them and therefore "conceded the correctness of the trial court's ruling" rejecting the bad-faith claim. *Id.* at 210, 880 P.2d at 307. "[C]ases are not authority for propositions not considered." *Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 84 N.M. 343, 348, 503 P.2d 323, 328 (1972). We conclude *Paiz* ought not be relied upon in answering the certified question and was not dispositive in answering the question raised in *Teague–Strebeck*, because in *Paiz* this Court as well as the trial court focused on the contractual nature of the claims, rather than the degree to which they also sounded in tort.

{13} *Teague–Strebeck* interprets *Paiz* as directly applicable to the tort of insurance bad faith. *Teague–Strebeck*, 1999–NMCA–109, ¶ 79, 127 N.M. 603, 985 P.2d 1183. As we read *Paiz*, however, the holding is more narrowly drawn: "[W]e hold that such [a punitive-damages] award for a breach of contract may no longer be based solely on the breaching party's 'gross negligence' in failing to perform the contract." *Paiz*, 118 N.M. at 204, 880 P.2d at 301. Because the tort of insurance bad faith is fundamentally distinct from a claim for breach of contract, and because insurance bad faith was not before the Court in that case, the opinion in *Paiz* is properly confined to the standard for punitive damages in a case for breach of contract.

**B.**

{14} The *Teague–Strebeck* court further advanced certain language from *Allsup's* as supporting its conclusion that this Court had raised the standard for punitive damages in insurance-bad-faith cases. *Allsup's* involved an insurer's appeal of a jury award of punitive damages in an insurance-bad-faith claim. 1999–NMSC–006, ¶ 44, 127 N.M. 1, 976 P.2d 1. The insurer, North River, argued its due process rights were violated by a jury instruction suggesting the jury would merely have to find unreasonable conduct, as opposed to bad faith, in order to be held liable for punitive damages. *Id.* The instruction at issue there, essentially identical to UJI 13–1705 NMRA 2003, read:

> Under the "bad faith" claim, what is customarily done by those engaged in the insurance industry is evidence of whether the insurance company acted in good faith. However, the good faith of the insurance company is determined by the reasonableness of its conduct, whether such conduct is customary in the industry or not. Industry customs or standards are evidence of good or bad faith, but they are not conclusive.

*Allsup's*, 1999–NMSC–006, ¶ 44, 127 N.M. 1, 976 P.2d 1. North River interpreted this instruction as permitting the slightest unreasonableness to render an insurance company liable for punitive damages. *Id.* ¶ 45. This, North River argued, conflicted with our statement in *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 9, 791 P.2d 452, 460 (1990) that a culpable mental state is a prerequisite to punitive damages.

{15} To resolve the alleged conflict, we examined another jury instruction given at trial that stated in part, "Allsup's contends and has the burden of proving that any bad faith actions on the part of North River were malicious, reckless or wanton, and, therefore punitive damages should be awarded." 1999–NMSC–006, ¶ 46, 127 N.M. 1, 976 P.2d 1 (emphasis omitted). Reading the two instructions together, we concluded the jury must have found "malicious, reckless, or wan-

ton conduct before it could award punitive damages." *Id.* Thus, *Allsup's* held, North River suffered no due process violation in the imposition of punitive damages. As we read *Allsup's,* its holding is strictly designed to resolve the question whether the jury was adequately instructed on the standard for punitive damages to survive a due process challenge. *See id.* ¶ 44. Accordingly, the presence of the second instruction on punitive damages enabled this Court to avoid the precise issue before us now, which is whether a greater standard than that required for compensatory damages in insurance-bad-faith litigation is required before instructing on punitive damages. As a result of these considerations, we believe the *Teague–Strebeck* court, understandably, may have been misled by our opinion in *Allsup's* in regard to what we now hold is the correct analysis of New Mexico law on the standard for punitive damages in insurance-bad-faith cases.

■ {16} In our current analysis, we conclude that *Allsup's* in fact supports our view that a punitive-damages instruction will ordinarily be given whenever the plaintiff is entitled to have the jury instructed on his or her insurance-bad-faith claim. In analyzing UJI 13–1705, the *Allsup's* court reasoned that "[w]hile bad faith and unreasonableness are not always the same thing, there is a certain point, *determined by the jury,* where unreasonableness becomes bad faith and punitive damages may be awarded." 1999–NMSC–006, ¶ 45, 127 N.M. 1, 976 P.2d 1 (emphasis added). In other words, there comes a point at which the insurer's conduct progresses from mere unreasonableness to a culpable mental state. Because the resolution of precisely where this point lies in each case depends on an assessment of the complex factual determinations surrounding the insurer's conduct and corresponding motives, such a question must ordinarily be reserved for the factfinder to resolve. As a general proposition, therefore, once a plaintiff has made a prima facie showing sufficient to submit his or her bad-faith claim to the jury, the determination whether the insurer's bad-faith conduct is deserving of punitive damages is for the jury to decide.

### III.

■ {17} Although we overrule *Teague–Strebeck's* holding that an award of punitive damages in such cases always requires evidence of culpable conduct beyond that necessary to establish basic liability, we agree with its statement that " 'bad faith' may include a culpable mental state, but it is not necessarily so." 1999–NMCA–109, ¶ 85, 127 N.M. 603, 985 P.2d 1183. We agree with this statement because of the manner in which the jury instructions for basic liability, UJI 13–1702 and 13–1704, are currently written. While these instructions properly convey the two standards we have previously articulated for a finding of a culpable mental state—a frivolous or unfounded refusal to pay, *see* UJI 13–1702, and a failure to honestly and fairly balance the interests of the insured and its own, *see* UJI 13–1704—we acknowledge the instructions as written might be interpreted, in some circumstances, as permitting merely unreasonable conduct to support a finding of bad faith sufficient for an award of punitive damages. This is because these instructions, particularly UJI 13–1702, include concepts of reasonableness along with concepts which may evince a culpable mental state. Because punitive damages are imposed for the limited purposes of punishment and deterrence, a culpable mental state is a prerequisite to punitive damages. *See McGinnis,* 110 N.M. at 9, 791 P.2d at 460. While the unreasonable conduct described in these instructions may support an award of compensatory damages, such conduct does not support an award of punitive damages. Thus, there may be cases in which a plaintiff, despite having advanced evidence sufficient to submit his or her bad-faith failure-to-pay claim to the jury, nevertheless fails to make a prima facie showing that the insurer's conduct exhibited a culpable mental state.

■ {18} Under New Mexico law, an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded. *See State Farm Gen. Ins. Co. v. Clifton,* 86 N.M. 757, 759, 527 P.2d 798, 800 (1974). In *Clifton* we concluded that in order to recover damages in tort under this claim, there must be evidence of

bad faith or a fraudulent scheme. *Id.* We further announced that "bad faith" means "any frivolous or unfounded refusal to pay." *Id.* (internal quotation marks and quoted authority omitted). We have defined "frivolous or unfounded" as meaning an arbitrary or baseless refusal to pay, lacking any support in the wording of the insurance policy or the circumstances surrounding the claim:

> "Unfounded" in this context does not mean "erroneous" or "incorrect"; it means essentially the same thing as "reckless disregard," in which the insurer *"utterly fail[s]* to exercise care for the interests of the insured in denying or delaying payment on an insurance policy." [*Jessen,* 108 N.M. at 628, 776 P.2d at 1247.] It means an utter or total lack of foundation for an assertion of nonliability—an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim. It is synonymous with the word with which it is coupled: "frivolous."

*Jackson Nat'l Life Ins. Co. v. Receconi,* 113 N.M. 403, 419, 827 P.2d 118, 134 (1992). By refusing or delaying payment on a claim for reasons that are frivolous or unfounded, the insurer has acted with reckless disregard for the interests of the insured; such reckless disregard supports a claim for punitive damages.

{19} We acknowledge, however, that the reasonableness of the insurer's conduct is generally an element of the jury's inquiry in determining whether compensatory damages should be awarded. For this reason, the bracketed second sentence of our jury instruction reads, "In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair [investigation or evaluation] of the claim." UJI 13–1702 NMRA 2003. In failure-to-pay claims, therefore, a plaintiff under these circumstances might make a proper showing that the insurer acted unreasonably in denying or delaying a claim, entitling the plaintiff to compensatory damages, without having made a prima facie showing that the refusal to pay was frivolous or unfounded. In such circumstances, it is proper for the trial court to submit the plain-tiff's bad-faith claim to the jury for consideration of an award of compensatory damages but withhold the punitive-damages instruction.

{20} On the other hand, while New Mexico recognizes a common-law cause of action for bad-faith failure to settle within policy limits, we do not recognize a cause of action for negligent failure to settle. *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 102 N.M. 28, 690 P.2d 1022 (1984). To be entitled to recover for bad-faith failure to settle, a plaintiff must show that the insurer's refusal to settle was based on a dishonest judgment. By "dishonest judgment," we mean that an insurer has failed to honestly and fairly balance its own interests and the interests of the insured. An insurer cannot be partial to its own interests, but rather must give the interests of its insured at least the same consideration or greater. *See Lujan v. Gonzales,* 84 N.M. 229, 236, 501 P.2d 673, 680 (Ct.App.1972). In caring for the insured's interests, "the insurer should place itself in the shoes of the insured and conduct itself as though it alone were liable for the entire amount of the judgment." *Dairyland Ins. Co. v. Herman,* 1998–NMSC–005, ¶ 14, 124 N.M. 624, 954 P.2d 56 (internal quotation marks and quoted authority omitted). As we stated in *Ambassador,* "[The insurer's] decision not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way." 102 N.M. at 31, 690 P.2d at 1025 (quoted authorities omitted). This element of a dishonest or unfair balancing of interests is the key element in determining whether, in bad-faith failure-to-settle claims, the insurer's conduct merits punitive damages.

{21} In such failure-to-settle claims, evidence of an insurer's negligence in researching a claim does not give rise to its own cause of action, but rather provides one possible means of demonstrating that an insurer acted in bad faith. As we said in *Ambassador:*

> [W]hen failure to settle the claim stems from a failure to properly *investigate* the claim or to become familiar with the applicable law, etc., then this is negligence in defending the suit (a duty expressly im-

posed upon the insurer under the insurance contract) and is strong evidence of bad faith in failing to settle. Here, basic standards of competency can be imposed, and the insurer is charged with knowledge of the duty owed to its insured. In this sense, such negligence becomes an *element* tending to prove bad faith, but not a cause of action in and of itself.

*Id.* at 31, 690 P.2d at 1025. Thus, if the insurer fails to meet "basic standards of competency" in investigating a claim or researching the applicable law, such conduct is "strong evidence" of bad faith, but is not in itself sufficient to support the plaintiff's bad-faith failure-to-settle claim.

{22} In *Ambassador*, we predicated an insurer's honest judgment on its diligent, competent investigation of the claim:

> In order that [the insurer's decision whether to settle] be honest and intelligent it must be based upon a knowledge of the facts and circumstances upon which liability is predicated, and upon a knowledge of the nature and extent of the injuries so far as they reasonably can be ascertained.
>
> This requires the insurance company to make a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated.

*Id.* (quoted authorities omitted). Our current uniform jury instruction reflects this standard of conduct when it states an insurer "has a duty to timely investigate and fairly evaluate the claim against its insured." UJI 13–1704 NMRA 2003. Nevertheless, we conclude the competence and timeliness of the insurer's investigation of the claim, while strong evidence of whether the insurer conducted itself fairly and in good faith, is not the dispositive element in a failure-to-settle claim. Even where the insurer's investigation was both competent and timely, the insurer is nevertheless liable for bad faith when its refusal to settle within policy limits is based on a dishonest judgment. In many respects, a dishonest judgment in these circumstances may be more reprehensible than where the insurer bases its decision not to settle on a negligent investigation. We conclude, therefore, in failure-to-settle cases, it is the insurer's failure to treat the insured

honestly and in good faith, giving "equal consideration to its own interests and the interests of the insured," *id.*, that renders the insurer liable for insurance bad faith and also merits an instruction on punitive damages.

### IV.

{23} As a result of the foregoing analysis, we conclude that in most cases, the plaintiff's theory of bad faith, if proven, will logically also support punitive damages. To ensure, however, that a jury only awards punitive damages for bad-faith conduct manifesting a culpable mental state, and not for conduct that may fall short of such reprehensibility, we find it necessary to augment the punitive-damages instruction to reflect the requisite standard for a culpable mental state. Accordingly, we modify the first sentence of UJI 13–1718 to read as follows:

> If you find that plaintiff should recover compensatory damages for the bad faith actions of the insurance company, and you find that the conduct of the insurance company was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton, then you may award punitive damages.

The trial court should include also the definitions of "dishonest judgment"—"a failure by the insurer to honestly and fairly balance its own interests and the interests of the insured"—along with the definitions of "reckless," "malicious," "willful," and "wanton." *See* UJI 13–1827 NMRA 2003. We believe this revised instruction will ensure the jury will award punitive damages only in those cases where the insurer's conduct is shown to have manifested a culpable mental state.

{24} Finally, in answering as we do that a punitive-damages instruction will ordinarily be given every time the jury is instructed on the plaintiff's insurance-bad-faith claim, we acknowledge the prospect that in certain instances a plaintiff's evidence of bad-faith conduct, though sufficient to entitle the plaintiff to compensatory damages, may be, as a matter of law, insufficient to warrant a punitive-damages instruction. Where the trial court determines, based on the evidence

marshaled at trial, that no reasonable jury could find the insurer's conduct to have manifested a culpable mental state, then the trial court may withhold the giving of a punitive-damages instruction. Accordingly, we also modify the Use Note for UJI 13–1718 to reflect that this instruction must ordinarily be given whenever UJI 13–1702, –1703, or –1704 is given; the instruction will not be given only in those circumstances in which the plaintiff fails to make a prima facie showing that the insurer's conduct exhibited a culpable mental state.

{25} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and RICHARD C. BOSSON, Justices.