This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**GLORIA COLEMAN,**

Plaintiff-Appellant,

v.                                                                                    **NO. 31,724**

**THE HARTFORD INSURANCE COMPANIES,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John W. Pope, District Judge**

Joseph David Camacho
Albuquerque, NM

for Appellant

Riley, Shane & Keller, P.A.
Mark J. Riley
Tiffany L. Sanchez
Shelby L. Carlson
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     Plaintiff Gloria Coleman appeals from the district court's order dismissing her case for intentional failure to provide discovery based on the refusal of Coleman's attorney, Joseph Camacho, and two of his employees to attend their depositions. We affirm.

**BACKGROUND**

{2}     In June 1999, Coleman was the passenger in an automobile driven by her husband when it was struck from behind by Kenneth Gebhardt. Coleman filed suit against Gebhardt in early 2002, and the case was ultimately settled for Gebhardt's policy limits of $50,000 in June 2006.

{3}     Coleman subsequently submitted a claim to The Hartford Insurance Companies (Hartford) pursuant to the UM/UIM provision of her policy. Mario Martinez, Hartford's claim representative assigned to handle the Coleman UIM claim, requested copies of medical records and bills related to the accident. Two years later, in August 2006, Camacho sent a letter to Hartford demanding policy limits of $3.5 million for the UIM claim. The letter claimed to attach a police report, an economist's report, two medical reports, the declaration page from the State Farm policy issued to Gebhardt, and medical bills totalling $63,143.52. No bills were attached to the demand letter. Martinez learned that Coleman had settled a previous disability claim against Burlington Northern Santa Fe Railroad and that she had injured her leg when she fell down a staircase. As a result, Martinez requested a complete copy of all Coleman's

medical records or a medical release, as well as bills from the accident. However, he did not receive any records or bills to support Coleman's demand for policy limits and, therefore, could not complete his evaluation of the claim. Martinez received nothing further from Coleman.

{4} Instead, in December 2006, Coleman filed suit for breach of an insurance contract for failure to pay a first-party claim, breach of the insurance practices act, and breach of the unfair trade practices act against Hartford. In the complaint, Coleman alleged that she had provided medical records to Hartford, that Hartford had not articulated any reason why it had not paid her claim, and that there were no pending questions "outstanding and unanswered." Specifically, Coleman stated that Hartford had adequate evidence to resolve the claim and that she had "cooperated fully in providing information to [Hartford] and has made herself available for any medical inquiries [Hartford] has desired or deemed necessary."

{5} During the discovery process, Hartford identified Camacho as a necessary and material witness and listed him on its witness list. Camacho had represented Coleman in the Gebhardt lawsuit, the underlying UIM claim against Hartford, and in this lawsuit. In turn, Coleman listed Julie McGrath and Pat Bennorth, Camacho's paralegal and legal assistant, as lay witnesses.

{6} Coleman testified at her deposition that she had no personal knowledge as to the claims handling process with Hartford and that she was unable to testify about any

claims handling that occurred. She further testified that she had not caused any communication with Hartford concerning the claim and that she had never contacted Hartford herself. As a result, Hartford noticed the depositions for Camacho, Bennorth, and McGrath. Coleman filed a motion for protective order, which the district court denied, ordering the depositions to proceed. Hartford again noticed the depositions of Camacho, Bennorth, and McGrath. Prior to the depositions, the district court denied Coleman's motion for reconsideration.

{7}     Coleman then filed a petition for writ of superintending control regarding the ordered depositions in the New Mexico Supreme Court. She also filed a notice of non-appearance for the depositions of Camacho, McGrath, and Bennorth in the district court. The Supreme Court denied both Coleman's emergency motion and motion for reconsideration, and Hartford thereafter requested available dates for the depositions. After Hartford yet again noticed the depositions, Coleman filed another notice of non-appearance. At a hearing on Hartford's motion to dismiss for failure to comply with discovery—in particular, the failure to proceed with the depositions of Camacho, McGrath, and Bennorth—Coleman's attorney persisted in refusing to have his own deposition taken and refused to give approval for the depositions of his staff. The district court granted Hartford's motion and stated that it was "willing to grant the motion to dismiss basically on the question of failure to abide by the order for discovery on the deposition issue." This appeal followed.

4

**DISCUSSION**

{8}     On appeal, Coleman raises four issues. While not entirely clear, we understand the issues to be: (1) whether the district court abused its discretion when it dismissed Coleman's case for non-compliance with discovery orders; (2) whether it was an abuse of discretion to "treat as a serious issue a claim without documentation, three . . . years old, that [Coleman] had misled the court"; (3) whether it was reversible error for the district court to allow Hartford four days to amend its expert witness list, but to deny Coleman the same; and, (4) whether it was an abuse of discretion to allow Hartford the opportunity to depose an expert five weeks after the close of discovery, while holding Coleman to strict deadlines. Because the first issue regarding dismissal for failure to provide discovery resolves the matter on appeal, we need not address Coleman's remaining arguments. We begin with the standard of review and then turn to the district court's order of dismissal.

{9}     Generally, we review discovery orders for an abuse of discretion. *Estate of Romero ex rel. Romero v. City of Santa Fe*, 2006-NMSC-028, ¶ 6, 139 N.M. 671, 137 P.3d 611. We review related questions of law de novo. *Id.*; *Pina v. Espinoza*, 2001-NMCA-055, ¶ 12, 130 N.M. 661, 29 P.3d 1062 ("To the extent a discretionary decision is premised on a construction of a privilege, it presents a question of law, subject to de novo review.").

{10} As we have explained, Coleman initiated this bad faith case against Hartford regarding the way Hartford handled her claim. In New Mexico, an insurer acts in bad faith when it denies a first-party claim for reasons that are frivolous or unfounded. *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶¶ 3, 18, 135 N.M. 106, 85 P.3d 230. However, an insurer has a right to refuse a claim without exposure to a bad faith claim if it has reasonable grounds to deny coverage. *See Jessen v. Nat'l Excess Ins. Co.*, 1989-NMSC-040, ¶ 7, 108 N.M. 625, 776 P.2d 1244, *limited on other grounds by Sloan*, 2004-NMSC-004. Here, Coleman's complaint alleged that she provided medical records to Hartford, that Hartford had not articulated any reason why it had not paid her claim, and that there were no pending questions "outstanding and unanswered." She further stated that Hartford had adequate evidence to resolve the claim and that she had "cooperated fully in providing information to [Hartford] and has made herself available for any medical inquiries [Hartford] has desired or deemed necessary." Hartford disputed Coleman's contentions. Specifically, Martinez stated that he never received executed medical releases, supplemental medical records, or medical bills from Coleman and therefore could not complete his evaluation of the claim. Whether or not Hartford received the documentation from Coleman is at the heart of this bad faith case.

{11} During the discovery phase of the case, the parties noticed the depositions of several witnesses, including Coleman's attorney and two of his employees. Rule

6

1-030(A) NMRA of our Rules of Civil Procedure allows for discovery depositions to be taken of "any person." The rule itself does not preclude depositions of attorneys. We note, however, that we disfavor depositions of a party's attorney and will allow them only in limited circumstances. This case presents such a circumstance. We explain.

{12}    At her deposition, Coleman testified that she had no personal knowledge as to the claims handling process with Hartford and that she was unable to testify about any claims handling that occurred. She further testified that she had not caused any communication with the Hartford concerning the claim, and that she had never contacted Hartford herself. Consequently, the only people involved in the adjustment process—and therefore who had information supporting Coleman's bad faith claim—were Camacho and his two employees, who he had already listed as witnesses. On these facts, the district court properly found that Camacho, McGrath, and Bennorth became essential witnesses in the case and that testimony regarding their communications with Hartford and other parties regarding the handling of Coleman's UM/UIM claim would be necessary to Hartford's defenses.

{13}    Hartford noticed the depositions of Camacho, McGrath, and Bennorth on two occasions. Each time, Coleman refused to allow the depositions, and she did so by filing various motions including a motion for protective order, motion for reconsideration, petition for writ of superintending control, motion for reconsideration

of the writ, and notice of non-appearance. With the exception of the motion for writ of superintending control and subsequent motion for reconsideration, which the Supreme Court denied without comment, the district court repeatedly denied Coleman's motions and ordered the depositions to proceed. Yet Camacho, McGrath, and Bennorth steadfastly refused to comply with the court's orders. Finally, at the hearing on the motion to dismiss, Camacho made clear that he would not submit to a deposition and he would not allow his staff to be deposed either.

{14} Pursuant to Rule 1-037(D) NMRA, the district court is authorized to impose sanctions upon a party for failure to attend a deposition. *Id.*; *Reed v. Furr's Supermarkets, Inc.*, 2000-NMCA-091, ¶ 7, 129 N.M. 639, 11 P.3d 603. In that regard, we have said that district courts have a duty to enforce compliance with the rules of discovery. *Reed*, 2000-NMCA-091, ¶ 8. Dismissal is among the type of sanctions available, and we review a court's dismissal of a plaintiff's case for discovery violations for abuse of discretion. *Id.* ¶¶ 7, 10. Coleman's refusal to comply with the district court's orders constituted a repeated and "flagrant bad faith and callous disregard for [her] discovery responsibilities." *Id.* ¶ 10 (alteration, internal quotation marks, and citation omitted). Consequently, we conclude that the district court did not abuse its discretion in dismissing Coleman's case. *See id.*

{15} As a final matter, we briefly address Coleman's argument that the district court's order requiring Camacho, McGrath, and Bennorth to proceed with their

8

depositions was an unjustified violation of recognized attorney-client privilege. Indeed, this appears to be the entire basis of Coleman's argument on appeal. Contrary to her assertions, however, and while we recognize the concern of any potential disclosure of attorney-client privileged communications when an attorney's deposition is taken, that concern was never at issue in this case. Here, Hartford advised the district court that it had "made it very clear" that it had no intention of going into issues involving attorney-client privilege at the depositions. Further, the district court stated on more than one occasion that Camacho, McGrath, and Bennorth need not answer any questions that were privileged. At the hearing on the motion for reconsideration of the court's denial of the motion for protective order, the district court stated that, given the circumstances, it was ordering "the limited deposition[s] for the purpose of discovering when documents were sent out or not sent out" and that Camacho would "be allowed to object to anything that you feel is within the parameters of attorney-client privilege and you can do the same for your paralegal." At the subsequent hearing on Hartford's motion to dismiss, the court reiterated that "the failure to take a deposition is totally unacceptable, and the procedural aspect of the case would be that if the deposition were taken you could have objected to the question at the time of the deposition[.]" Despite the district court's recognition that the attorney-client privilege applied in this case and that Coleman was entitled to invoke that privilege, Coleman—through her counsel—nevertheless refused to allow

9

Comacho, McGrath, and Bennorth to attend their court-ordered depositions. The district court exercised care before permitting the depositions, and Coleman provides no further argument or authority as to how the court abused its discretion by ordering the discovery of relevant and non-privileged information. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that where a party cites no authority to support an argument, we may assume no such authority exists). We emphasize again our general disapproval of noticing the deposition of an opposing party's attorney. However, in the limited circumstances of this case, we conclude that the district court appropriately dismissed Coleman's complaint against Hartford as a discovery sanction.

**CONCLUSION**

{16}    For the foregoing reasons, we affirm the judgment of the district court.

{17}    **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

10

_____

**J. MILES HANISEE, Judge**