NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

OCT 23 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BARBARA STEIN, an individual, | No.   22-55356 |
| Plaintiff-Appellee, | D.C. No. |
| and | 3:19-cv-00410-DMS-AHG |
| STUART STEIN, an individual, | MEMORANDUM* |
| Plaintiff, | |
| v. | |
| FARMERS INSURANCE COMPANY OF ARIZONA, a corporation, | |
| Defendant-Appellant, | |
| and | |
| FARMERS INSURANCE EXCHANGE; et al., | |
| Defendants. | |

| | |
|---|---|
| BARBARA STEIN, an individual, | No.   22-55414 |
| Plaintiff-Appellant, | D.C. No. |
| and | 3:19-cv-00410-DMS-AHG |

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

STUART STEIN, an individual,

                  Plaintiff,

  v.

FARMERS INSURANCE COMPANY OF
ARIZONA, a corporation,

                  Defendant-Appellee,

 and

FARMERS INSURANCE EXCHANGE; et
al.,

                  Defendants.

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, Chief District Judge, Presiding

Argued and Submitted October 6, 2023
Pasadena, California

Before:  BYBEE, BENNETT, and MENDOZA, Circuit Judges.

In this diversity action, a jury found that Farmers Insurance Company of Arizona ("FICA") breached its contract, engaged in bad faith, and violated New Mexico's Unfair Insurance Practices Act ("UIPA") in handling Barbara Stein's personal injury claim under her auto insurance policy.  FICA appeals from the district court's denial of its motion for directed verdict on the bad faith and UIPA claims.  It also appeals from the district court's denial of its Federal Rule of Civil

Procedure ("Rule") 60(a) motion to correct the judgment. Stein cross-appeals from the district court's decision to apply the federal postjudgment interest rate statute.[1]

1.  We review "de novo the district court's denial of a motion for judgment as a matter of law," construing the evidence in the nonmoving party's favor. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc). "A jury's verdict must be upheld if it is supported by substantial evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).

a.  FICA argues that substantial evidence does not support the jury's bad faith finding. "Under New Mexico law, an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 236 (N.M. 2004). Frivolous or unfounded means "arbitrary or baseless" conduct, "lacking any support in the wording of the insurance policy or the circumstances surrounding the claim." *Id.* at 237. "Where an insurer fails to make an adequate investigation, its coverage position is unfounded, and it thus

---

[1] Stein's request for attorneys' fees included in her brief (Dkt. No. 28) is denied without prejudice to her filing a separate motion that complies with 9th Cir. R. 39-1.6. Each party shall bear its own costs on appeal.

may be liable for bad faith denial of a claim." *Haygood v. United Servs. Auto. Ass'n*, 453 P.3d 1235, 1241 (N.M. Ct. App. 2019).

Substantial evidence supports that FICA engaged in unfounded delay. Immediately after the accident, Stein gave FICA a medical authorization, allowing it to obtain her medical records. FICA, however, did almost nothing in investigating Stein's injuries for the first five months after the accident. In April 2019, Stein sent FICA a detailed, twenty-eight-page letter explaining her physical and mental injuries caused by the accident and related medical procedures. FICA made a partial payment in May 2019 and continued its investigation, but it did not conduct an independent medical examination ("IME") to determine Stein's injuries caused by the accident until September 2020—nearly two years after the accident. Stein's insurance claims expert testified that FICA's delay in investigating Stein's claim and conducting an IME was unfounded.

Based on this evidence, the jury could have reasonably found that FICA's two-year-long investigation amounted to an unfounded delay, and thus FICA acted in bad faith.[2]

Substantial evidence also supports that FICA failed to conduct an adequate investigation, rendering its coverage position unfounded. Stein's April 2019 letter

---

[2] FICA argues that the COVID-19 pandemic caused part of the delay. We do not doubt that, but the jury was apprised of the relevant facts, and, as noted, the evidence supports the jury's finding.

4

to FICA claimed that she sustained post-traumatic stress disorder ("PTSD") and traumatic brain injury ("TBI") from the accident. Although she never provided FICA with medical records supporting these injuries, they were plausible given the circumstances, including: the extremely violent nature of the crash, the resulting bruise on Stein's head, and Stein's subsequent vision problems. The evidence at trial showed that the accident caused Stein's TBI and PTSD.

FICA, however, conducted no investigation into these injuries. Indeed, the doctor it hired to conduct the IME only evaluated Stein's "orthopedic abnormalities" and was not qualified to evaluate PTSD or behavioral health. FICA also admitted that it had no written information suggesting that these injuries were preexisting. Thus, the jury could also have found that FICA acted in bad faith because it had no basis for excluding these injuries from its coverage determination.

b.      FICA argues that there was insufficient evidence to support a UIPA violation. As relevant here, a violation occurs when an insurer "knowingly . . . [and] with such frequency as to indicate a general business practice" does "not attempt[] in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear." N.M. Stat. Ann. § 59A-16-20(E).

Viewing the evidence in Stein's favor, the jury could have concluded that

FICA had a general business practice of failing to effectuate prompt, fair, and equitable settlements. FICA's claims adjuster testified that he has worked for FICA for twenty-seven years and adjusted thousands of liability claims. He explained that he generally calculates a dollar-value range for claims, and his "custom and practice" is to start negotiations at the "low end of the range." He also testified that sometimes he does not pay out a claim for ten or fifteen years. And he may withhold payment until an insured is ready to settle and sign a release, even if the insured suffers severe injuries like brain damage, the insured believes that FICA's offer is too low, and the insured is under financial pressure.

Based on this evidence, the jury could have reasonably found that FICA's settlement practices—starting at the low end of its calculated dollar-value range and withholding payment for over a decade, even for insureds who suffer severe injuries and are under extreme financial stress—showed that, even when liability is reasonably clear, FICA waits out its insureds to obtain a release rather than trying to achieve a prompt and fair settlement in violation of the UIPA.

2. The district court denied FICA's Rule 60(a) motion to alter the judgment's damages award by subtracting FICA's post-verdict payment to Stein. We review for abuse of discretion a district court's denial of a Rule 60(a) motion. *See Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir. 1987). Under Rule 60(a), the district court "may correct a clerical mistake or a mistake arising from

6

oversight or omission whenever one is found in a judgment." Fed. R. Civ. P. 60(a). "Errors correctable under Rule 60(a) include those where what is written or recorded is not what the court intended to write or record." *Blanton*, 813 F.2d at 1577.

The record shows that Stein's proposed judgment reflected a damages amount that did not deduct the post-verdict payment, and FICA expressly agreed with Stein's damages calculation. The district court therefore reasonably determined that no mistake had been made because, consistent with the parties' filings, the court intended to enter the damages amount reflected in the judgment.[3]

3. We review de novo whether the district court properly applied federal law in awarding postjudgment interest. *See In re Cnty. of Orange*, 784 F.3d 520, 525 n.3 (9th Cir. 2015). When, as here, the issue is whether to apply a federal *statute* in a diversity action, our analysis "involves a considerably less intricate analysis than that which governs the 'relatively unguided *Erie* choice.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 26 (1988) (quoting *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)).[4] "[W]hen the federal law sought to be applied is a

---

[3] During oral argument, Stein's counsel made an enforceable judicial admission that Stein would never seek to double recover the post-verdict payment. Oral Arg. at 31:10–31:35. Thus, even aside from our finding that the district court did not err in denying the motion, we also fail to see any possible future harm to FICA.

[4] Stein's arguments rest on the incorrect premise that we *must* conduct an *Erie* analysis.

congressional statute, the first and chief question for the . . . court's determination is whether . . . the statute covers the point in dispute." *Id.* at 26. If it does, the court "proceeds to inquire whether the statute represents a valid exercise of Congress' authority under the Constitution." *Id.* at 27. "If Congress intended to reach the issue before the [court], and if it enacted its intention into law in a manner that abides with the Constitution, that is the end of the matter . . . ." *Id.* A court "sitting in diversity must apply a federal statute that controls the issue before the court and that represents a valid exercise of Congress' constitutional powers." *Id.*

The federal postjudgment interest rate statute, 28 U.S.C. § 1961(a), covers the dispute. The statute is constitutional under binding precedent. *See Northrop Corp. v. Triad Int'l Marketing S.A.*, 842 F.2d 1154, 1156 (9th Cir. 1988). Thus, the district court properly applied § 1961(a). *See Stewart Org.*, 487 U.S. at 27.

**AFFIRMED.**